The City of Bath *v.* Miller.

---

## The City of Bath *versus* Gilbert Miller.

The statutes of 1860, chapters 450 and 475, authorizing the extension of the Androscoggin Railroad from Leeds to Topsham, recognize the "original road" and "the extension," as separate and distinct roads, for certain purposes.

Those statutes authorize the mortgage of "the original road" and "of the extension," treating them as distinct roads, and as having separate and distinct franchises; but do not authorize a mortgage of the *whole road* as a unit.

Property, purchased by the earnings of the whole road after its completion, is not included in either of the mortgages authorized by those statutes.

By section six of chapter 450, the city of Bath, on neglect of the company to pay the coupons on the scrip issued by the city, was authorized to take possession of all the property of the whole company, existing at the time whenever possession should be taken.

But such taking of possession does not vacate an attachment of property of the company previously made.

No suit can be maintained by virtue of this section, which was commenced before the city took possession of the property of the company.

Whatever rights were given to the city of Bath, by the eleventh section of the same statute, can be enforced only in the manner therein provided.

The City of Bath *v.* Miller.

Its provisions cannot be interposed to sustain an action of replevin by the city, for wood purchased by the company from the earnings of the whole road, and attached before possession of the road was taken by the city under section six; nor to prevent "judgment for return" in such action.

ON REPORT from *Nisi Prius*, WALTON, J., presiding.

REPLEVIN for 1329 cords of wood, which the defendant had attached as the property of the Androscoggin Railroad Company.

The plaintiffs claimed title under two mortgages, which are sufficiently described in the opinion, and under chapters 450 and 475 of the special laws of 1860.

The plaintiffs offered evidence tending to show that coupons of the city of Bath, issued for the benefit of the railroad company, had, since the commencement of this action, been presented to the treasurer of the city of Bath for payment, and, though due, had not been paid, and which, by the conditions of the said mortgages, the said company was bound to pay. The other facts are stated in the opinion.

*Tallman & Larrabee,* for plaintiffs.

1. The mortgages were legally authorized and properly executed. They embrace after acquired property and all the property of the corporation.

2. Being mortgagees, the plaintiffs have the right to immediate possession.

3. The coupons having been dishonored, and notice thereof given, all the property of the company, by the statute, is transferred to the city, to hold against all other claims.

4. If this transfer, by operation of law, will not defeat this action, yet, as the wood is now the property of the plaintiffs, the Court will not give judgment for return.

*J. C. Woodman,* for defendant, submitted an elaborate argument.

1. Independently of statutes; the plaintiffs cannot hold this wood under the mortgages, because it was not in existence, or the property of the company at the time the mortgages were executed.

2. The mortgages do not profess to convey the property *of the company;* but only the " old road" and " the extension," and the separate property belonging with each of them. The statute treats the " old road " and " the extension" as separate ; and the mortgages follow the statute.

3. Any forfeiture, under section six of chapter 450 of the laws of 1860, cannot affect this attachment made before there was any forfeiture. Nor can this suit be maintained upon a title acquired after it was commenced, even if such a title has been acquired.

4. Section eleven of the same statute does not aid the plaintiff. The lien given by that was upon property in existence when the bonds were issued. Besides, under that section, the plaintiff's only remedy is by Bill in Equity.

5. The defendant is entitled to a judgment for a return.

Other points were argued, but they did not become material in the view the Court took of the case.

*Drummond*, for defendant.

Even if taking possession under section 6 (ch. 450, laws of 1860,) dissolves a previous attachment, no such facts have been proved as justify taking possession under that section.

The proof is, that the coupon was presented to the Treasurer of Bath, and payment refused.

1. The plaintiffs cannot *by their own act* create a forfeiture *in their own favor*.

2. But the duty of paying the coupon is imposed by the statute, not on *Bath*, but on the *Railroad Company*. The plaintiff must show that the coupon was presented to the proper officer of the Railroad Company, or where it was payable, and payment refused, before *any* forfeiture can be claimed.

The plaintiffs, therefore, fail to show any reason under this section why there should not be judgment for a return.

*Evans*, for plaintiffs, in reply.

The opinion of the Court was drawn up by

APPLETON, C. J.—After the Androscoggin Railroad Company had built their road from Farmington to Leeds, it was authorized by the Act of 1860, c. 386, to extend their road to Topsham or Brunswick, there to connect with the Kennebec Railroad.

As it was deemed very improbable that the necessary funds for the completion of the railroad, as thus extended, would be raised by subscription, authority was given to the city of Bath to aid in the completion of the extension by the Acts of 1860, c. 450 and c. 475.

The statutes referred to recognize the "original road" from Farmington to Leeds, and "the extension" from Leeds to Topsham or Brunswick as, for certain purposes, separate and distinct roads. After the extension was completed, there was the Androscoggin Railroad from Farmington to Brunswick, which was to be regarded as a unit composed of the "original road" and "the extension."

After the completion of the extension, the Androscoggin Railroad, composed of the original road and the extension, with its own funds, purchased a large quantity of wood for its own use, which was attached by the defendant, a deputy sheriff, on various writs issued against it in favor of its creditors. While the extension was being built, both the original road and the extension had each its separate treasurer and treasury, and the funds of each were kept distinct, as of several corporations. This had ceased to be the case when the wood in controversy was purchased. The funds of the whole road, without any distinction as to their origin, were paid to the treasurer of the Androscoggin Railroad, and by him used in the purchase of the wood in question.

The plaintiffs claim title to this wood by virtue of rights acquired under the statutes before referred to.

When the Act authorizing the extension of the Androscoggin Railroad was passed, the railroad was subject to va-

rious mortgages, and to prevent their attaching to the extension, the Act of 1860, c. 475, was passed.

By c. 450 of the special Acts of 1860, "the city of Bath was authorized to aid in the construction of an extension of the Androscoggin railroad from the town of Leeds to Topsham or Brunswick."

By section 4, the corporation was authorized, on certain conditions, to execute and deliver to the treasurer of Bath " a mortgage of said extension of their railroad from Leeds to Topsham or Brunswick and *of all the property of said extension* which they then have or may subsequently acquire, and also the franchise of said extension, without prior incumbrance ; also, the said mortgage shall be made so as to embrace not only the said extension, but also the *original road of said company from Leeds to Farmington,* and *of* all the property of *said* road, including the franchise *thereof,* subject, however, to prior uncancelled mortgages upon the same." The mortgages under which the city claim were given under the authority of this section, and, in their terms, are expressly limited by its provisions.

The section treats the " extension" and " the original road" as separate and distinct corporations. The wood in controversy was not purchased with the special funds of the extension — nor with those of the original road. It did not belong to the " extension," nor did it belong to the " original road." It was bought with the funds of the " whole of said railroad," and belonged to and was the " property of the whole of said railroad," and not of either of the component parts, by whose union it existed as an unit.

The plaintiffs fail to show a title by either of their mortgages.

By section 6, in case of the neglect of the Androscoggin Railroad Company to pay the principal and interest of the scrip, issued under the provisions of this Act, the city of Bath was authorized " to take actual possession in the manner hereinafter provided, of the whole of said railroad and of all the property, real and personal, of the company, and

of the franchise thereof, and" to "hold the same and apply the income thereof, to make and supply such deficiency and all further deficiencies that may occur, while the same are so held, until such deficiencies shall be fully made up and discharged." Whether the facts would ever exist authorizing the taking possession of "the whole of said railroad," was altogether uncertain. Whenever they should exist, this section, as between the plaintiffs and the Androscoggin Railroad, gives the plaintiffs a right to take possession of "the whole of said railroad, and of *all* the property of the company," as it should be when possession should be thus taken. It refers, not to "all the property, real and personal," when the mortgages, by section 4, were given, or when the lien, by section 11, was created, but to *all*, when the possession thereby authorized, should be taken. The scrip, for securing which this right was given, was payable at the expiration of thirty years. If the rights of the city were to be limited to the road and its property, real and personal, as existing when the scrip was issued, long before it would become payable, there would be nothing of value of the original property of which to take possession. The city of Bath was to "hold" the road and apply the "income" thereof to secure and enforce the payment of what might be its due. The city might take possession of *all* the property the railroad might own, upon the happening of the contingency contemplated in this section.

But, when the attachments in question were made, and when this suit was instituted, the plaintiffs had not taken possession under section 6. Before possession taken, the wood was liable to attachment and was attached. By this attachment a lien was acquired upon the property attached. The plaintiffs were not then in possession. When this suit was commenced, the city had acquired no rights under this section. Its subsequent action cannot be invoked in aid of the present suit, if not rightfully commenced.

By section 11, the city of Bath has a lien on "*the whole* of said railroad, its franchise, and all its appendages, and

The City of Bath *v.* Miller.

all real and personal property of said railroad corporation." It is further provided by this section, that "this lien shall be enforced and all the rights and interests of the city shall be protected, when necessary, by suitable and proper judgments, injunctions, or decrees, of said Supreme Judicial Court, on a bill or bills in equity, which power is hereby specially conferred on said Court."

No bill in equity has been commenced. The lien, whether limited to the property of the corporation at the date of its origin, or embracing after acquired property, is given by this section. It is a peculiar right, not of common law origin, but deriving its vitality solely and exclusively from this statute. The remedy for its enforcement is provided by the section which creates this new right. When a right with its appropriate remedy exists at common law, if a statute gives a new remedy in affirmative words, this does not take away the common law remedy. But if a new right be conferred or created by the statute, the remedy prescribed by the statute, and none other, can be pursued. *Renwick* v. *Morris*, 7 Hill, 575. If a statute create a right, which *did not exist before*, and prescribe a remedy for the violation of it, that remedy must be pursued. *Stafford* v. *Ingersoll*, 3 Hill, 38; *St. Pancras* v. *Batterbury*, 89 Eng. Com. Law, 471.  *Plaintiff's nonsuit and return ordered.*

DAVIS, KENT, WALTON and DICKERSON, JJ., concurred.