## Case No. 5,443.

### GILMAN et al. v. ILLINOIS, ETC., TEL. CO.

[1 McCrary, 170.] [1]

Circuit Court, D. Iowa. Oct., 1874.[2]

RAILWAY—MORTGAGE OF ROAD AND INCOME—GARNISHMENT OF RAILROAD COMPANY BY GENERAL CREDITORS.

A general judgment creditor of a railroad company, in a case where the trustees under a prior mortgage of the road and income never obtained possession of the road, or demanded the income, was held entitled by virtue of a garnishment of the officers of the railroad company to the net income of the road between the date of a decree of foreclosure and the appointment of a special receiver, the de-

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. Geo. W. McCrary, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 91 U. S. 603.]

cree of foreclosure being silent as to such income, and the road meanwhile being operated by the company.

[See note at end of case.]

[This was a bill by Gilman, Cowdrey and others, trustees, against the Illinois & Mississippi Telegraph Company.]

In 1857 the Des Moines Valley Railroad Company made to trustees a mortgage, and in 1858, to other trustees, another mortgage to secure a large number of bonds. They were ordinary railway mortgages conveying the road, franchises, rolling stock, etc., together with "all rents, issues, incomes, tolls and profits." In case of default to pay interest or principal, the trustees were authorized to take possession "and collect and receive the tolls, incomes, issues and profits," and apply them on the debt secured by the mortgages, and upon the request of one-third of the bondholders to sell railroad and property mortgaged. The trustees never took possession; but default having been made in the payment of interest on both mortgages, the trustees in the second mortgage, in July, 1872, commenced suit to foreclose in one of the state courts, making the railway company, the trustees in the first mortgage, and various judgment and lien creditors of the company parties defendant, and among others the Illinois and Mississippi Telegraph Company. No receiver was applied for or appointed pending the foreclosure proceedings except as hereinafter stated. On May 31, 1873, a decree of foreclosure was entered by the state court, fixing the priorities of the several parties, and holding that the telegraph company's judgment for $25,185.76, rendered in this court, May 21, 1872, was a lien subject to the mortgages in suit and certain other specified liens. The decree ordered a sale of the mortgaged property by the sheriff on special execution, but as originally entered made no provision as to the possession or earnings of the road (which was still in the possession of the railroad company and operated by it) between the date of the decree and the sale which the decree ordered. This decree was rendered May 31, 1873, and on the thirteenth day of June, 1873, the telegraph company issued execution on its judgment out of this court, and garnished, under the statute of the state, moneys in the hands of the agents of the railroad company at its various stations received by them from the income and earnings of the road. On June 20, 1873, the trustees in the first and second mortgages filed in this court the present bill in equity against the telegraph company to enjoin the said proceedings upon the execution under its judgment, which bill was, on the twenty-seventh day of June, 1873, amended so as to make the Des Moines Valley Railroad Company also a defendant, and a temporary injunction was allowed as prayed. On September 9, 1873, after a sale had been advertised by the sheriff, application was inform-

ally made without any petition for rehearing or bill of review to the state court by the trustees under the first mortgage for a modification of the decree of May 31, 1873, and the same was modified in several important particulars; and among other additions to the decree, was one appointing a "special receiver of all the incomes and earnings of the road" between the date of the decree or sheriff's first publication of notice of sale and the sale to be made by him. This was done saving the rights of the telegraph company. The special receiver took possession September 15, 1873. The sale by the sheriff under the decree (which was absolute, and under which the purchasers were let into possession) took place October 17, 1873, and left a large amount of the mortgage bonds unpaid. Between the date of the decree of May 31, 1873, and September 15, 1873, when the special receiver took possession, the road was operated by the railroad company, and during this period the net earnings, after paying operating expenses, were $27,147.96.

John Fyffe and Gatch, Wright & Runnels, for plaintiff.

Cook, Richman & Bruning, for defendant

Before DILLON, Circuit Judge, and LOVE, District Judge.

DILLON, Circuit Judge. Among other security taken by the bondholders was a pledge of the income and earnings of the road, with a provision that the railroad company should remain in possession until default in the payment of interest or principal, and upon default by the company in this respect, that the trustees might take possession and collect and receive the earnings of the road. They never took possession or asked for it, nor did they apply for a receiver at any time prior to the ninth day of September, 1873. He took possession September 15. The decree rendered May 31, 1873, made no provision as to the income of the road, or disposition of it. The present controversy respects only the right to the net income between the date of the decree and the appointment of a special receiver. The telegraph company claims it by virtue of its seizure on execution by garnishment of the agents of the railroad company. The plaintiffs claim it by virtue of the mortgages to them as trustees. To this claim on the part of the plaintiff the defendant relies upon two main grounds of objection: 1st. That the decree of foreclosure merges their rights under their mortgages, and now constitutes the measure of their rights; and as this decree did not give them the earnings in the interim between it and the sale, they cannot now fall back upon their mortgage and claim such earnings under it. But if the plaintiffs may still rest upon the mortgages, the defendant contends that until they take possession under them, or apply

for and obtain a receiver, the income or earnings may be used by the company or seized by its creditors, especially as the mortgage contains no covenant by the company to apply its net earnings to the payment of the mortgage debt.

If it be conceded that the first position of the telegraph company is not well taken, we would be brought at once to the inquiry, what is the effect of the pledge of the rents and profits, and what must be done to make such pledge effectual?

The cases on the subject in this country are not very numerous, and those in England are controlled by very special statutory provisions.

The supreme court of the United States has decided that under a mortgage by a railway company of its tolls and income the bondholders or trustees cannot make the railroad company or its assignees accountable therefor, until at least a regular demand has been made upon the company therefor. Galveston R. Co. v. Cowdrey, 11 Wall. [78 U. S.] 459, 482. So in Noyes v. Rich, 52 Me. 115, it was held that a receiver appointed in a suit to foreclose a railway mortgage could not recover the earnings of the road accruing before his appointment. And see City of Bath v. Miller, 51 Me. 341.

In the case of the Galveston Railroad, above cited, there was, as here, a mortgage of the tolls and income, with power in the trustees on default to take possession and sell. Mr. Justice Bradley, referring to these provisions in the deed of trust, says: "It seems to us that the latter clause defines and points out the manner in which the pledge of the tolls and income is to be practically carried into effect. At all events, until a regular demand was made for the payment of the tolls and income, we do not think, under the language of the deed, that the defendants were bound to account therefor."

There is in the case now before us no proof of any demand of the trustees for the income or earnings upon the railroad company before the foreclosure suit against it, or pending the foreclosure suit, until the ninth day of September, when, upon the application of some of the trustees, a special receiver was appointed, unless this suit can be considered such a demand. I do not think it should be so regarded. This suit was not brought to settle rights between the plaintiffs and the railroad company—those had been settled or were to be settled in the state court which had jurisdiction of that controversy.

Since the railroad company, before and pending the foreclosure, was left in possession of the road, and since no attempt to disturb it was made, no receiver applied for or provision made in the decree as to the earnings between the decree and the sale, I am impressed with the belief that the plaintiffs in the foreclosure suit did not intend to disturb the possession of the com-

pany, and that no question would have been made as to these earnings or their application if the telegraph company had not levied its execution.

On the whole, I think the bill ought to be dismissed. Judge LOVE agrees in the conclusion that the net income was subject to garnishment, but is of opinion that the gross income cannot thus be seized.

Decree accordingly.

[NOTE. This decree was affirmed in the supreme court (91 U. S. 603) in an opinion by Mr. Justice Swayne, in which it was held that it is competent for the mortgagee to pursue three remedies at the same time. He may sue on the note or obligation, he may bring an action of ejectment, and he may file a bill for foreclosure and sale. In this case the last-mentioned remedy was adopted, and a final decree made for the sale of the property only. The decree was silent as to possession and earnings in the meantime, and, until the mortgagee took possession, the earnings were the property of the railroad company, and subject to attachment by its judgment creditors.]