STAPLES, J.,
delivered the opinion of the court.
*In this case a decision was rendered at the last term of the court at Staunton, affirming the decree of the circuit court of the city of Alexandria.
One of the questions presented by the record was not, however, passed upon at that time; this court for reasons perfectly satisfactory to itself, reserving it for future consideration. That question grows out of a controversy between the mortgage creditors on the one hand and certain execution creditors on the other. These latter creditors had placed their executions in the hands of the proper officer prior to the appointment of the receiver. At that time the company had money in bank to its credit, which together with what was due to it from other sources amounted to about twenty-one thousand dollars.
The point now to be decided is to whom does this fund belong—to the mortgage or trust creditors or to the execution creditors ?
The decision of this question has been to some extent foreshadowed in the opinion just delivered. The subject, however, from its importance and novelty in this State, deserves a more extended consideration.
All the deeds executed by the company upon the road, embrace also the tolls, income, and earnings derived therefrom. Some of these deeds provided that upon default made in the payment of interest, the trustees on request of the bondholders, may take possession of, and manage the road, and after paying the necessary expenses of op *558 erating the same, pay over the proceeds to the creditors secured; or they may sell the property upon request of at least one-half the bondholders.
Nothwithstanding the long continued default of the company in paying the interest accruing from time to time, the trustees never took possession of the road, and it is asserted in the bill, they were unable to do so *in consequence of the conflicting claims and liens of the various trust creditors. Nor is it pretended that any demand was ever made upon the company for tolls and earnings, until the bill was filed in the present case.
Notwithstanding a few decisions to the contrary, it is now well settled that so long as the mortgagor is permitted to remain in possession by the property, he is entitled to receive and apply to his own use, the income and profits, of the mortgaged estate. And this is true although the mortgage by its terms covers the rents and profits, and although the creditor is authorized to take possession upon default made in the payment of the debt. As was said by Lord Mansfield, in Chewning v. Black, 3 Dougl. R. 391, until the mortgagee takes possession, the mortgagor is owner to all the world, and is entitled to all the profits made. These principles apply with greater force to mortgages of railroad property, than to any other class of securities. It is universally understood that so long as the company continues in possession, it must have the unlimited use and control of the earnings of the road, 'for the -purpose of meeting its current expenses. Such earnings are indispensable for the work of repair and replacement, the purchase of supplies, and material and equipments, and for the payment of wages arid salaries due to agents and employees.
Whilst it may be the duty of the company after payment of its current expenses to apply the income to the liquidation of interest due upon its bonds, it has been properly said—-This obligation of its own force, no more carries title to the particular money received, as income, to the bondholders or trustees, than does the obligation to pay a debt, in ordinary cases, carry title to the creditors of the money in the debtor’s pocket. Whether we call the earnings of the road *net income, or gross income, they constitute but onei fund in the treasury of the company, the control and disposition of which are inconsistent with the supposed title of the trustees to any part of it.
In the case of Gilman v. Illinois and Mississippi Telegraph Company, 91 U. S. R. 603, this precise question arose under a deed of trust very similar in its provisions to the deeds here. Mr. Justice Swayne delivering the opinion of the court, said: “Possession draws after it the right to receive and apply the income. Without this the road could not be operated, and no profits could be made. Mere possession would have been useless to all concerned. The right to apply' enough of the income to operate the road, will not be questioned. The amount directed to be so applied was within the discretion of the company. The same discretion should extend to the surplus. It was for the company to. decide what should be done with it. In this condition of things the whole fund belonged to the company and was subject to its control. It was therefore liable to the creditors of the company as if the mortgages did not exist! They in no wise affected it. If the mortgagees were not satisfied, they had the remedy in their own hands, and could at any moment invoke the aid of the law, or interpose themselves without it.”
These doctrines thus explicitly announced by the supreme court of the United States, had been previously declared in Galveston Railroad Company v. Cowdly, 11 Wall. U. S. R. 459; and they have been since reaffirmed in American Bridge Company v. Hudlebach, 4 Otto R. 798. They are fully sustained by the current of authority elsewhere. See cases cited in Jones on Railroad Securities, sec. 114 to 119, inclusive, and the cases cited.
*It has been already stated, that in some of the deeds no provision is made for the trustees to enter and take possession of the road; but a mere power of sale is conferred upon default made in paying the mortgage debts. Under these deeds there can be no pretence of any claims by the trust creditors to any part of the earnings so long as the company is permitted to remain in possession. The power of sale only contemplates an appropriation of the proceeds of sale of the premises to the payment of the debts, but not the earnings of the road, at least until demand made by the trustees for such earnings.
For these reasons, we are of opinion that the execution creditors are entitled to the fund in controversy, and the circuit court of Alexandria did not err in so decreeing. The decree of that court upon this branch of the case must therefore be affirmed.
Decree affirmed.