In re COLTER, INC., Debtor.

In re GLISSADE, INC., Debtor.

In re MOUNTAINEER CORPORATION, Debtor.

In re GOLDSTONE, INC., Debtor.

In re BRIDGER, INC., Debtor.

In re PEAKVIEW INCORPORATED, Debtor.

In re TGP, INC., Debtor.

Bankruptcy Nos. 84 B 4564 G to 84 B 4567 J, 84 B 4570 M, 84 B 4569 G and 84 B 4568 M.

United States Bankruptcy Court, D. Colorado.

Oct. 23, 1984.

Sterling & Miller by Nancy D. Miller, Denver, Colo., for debtors.

Sherman & Howard by Mark L. Fulford, Denver, Colo., for Consol. Capital Income Trust.

## ORDER RE: CASH COLLATERAL

JAY L. GUECK, Bankruptcy Judge.

Consolidated Capital Income Trust (CCIT) is a secured creditor of the above-named debtors, by virtue of a Deed of Trust recorded May 2, 1983, in Book 2801, at page 81 of the Records of the Clerk and Recorder in Denver County, Colorado. This Deed of Trust secures a Promissory Note in the principal amount of $15,000,-000.00. Additionally, there has been recorded a Conditional Assignment of Rents and Leases, between the parties, recorded on May 2, 1983, in Book 2801, at page 104. This Deed of Trust and accompanying Conditional Assignment of Rents and Leases provided for CCIT to have an assignment of rents (including leases, rents, issues, profits, revenues, royalties, rights and benefits of the property) in the event of debtors' default on the Promissory Note. Default occurred on or about June 1, 1984, and the Promissory Note remains in default.

On July 30, 1984, CCIT and the debtors entered into an agreement, which provided, *inter alia*, as follow:

"The [Promissory] Note is in default for failure to pay in full, among other things, on their respective due dates, certain installments of interest and impound deposits. The Note and Indebtedness have been fully and properly accelerated and the entire balances thereof are mature and due."

Voluntary Petitions under Chapter 11 of the Bankruptcy Code were filed by each of the above-named debtors on September 21, 1984.

Controversy has now arisen over whether the Assignment of Rents constitutes "cash collateral" and is subject to the provisions of 11 U.S.C. § 363. CCIT notified the debtors on the day bankruptcy was filed that CCIT intended to avail itself of its rights under the Assignment of Rents

and that CCIT objected to the use of cash collateral by these debtors. However, the debtors assert the rents are not cash collateral, since CCIT did nothing before the bankruptcy filings to perfect its lien under Colorado law.

On September 24, 1984, CCIT filed a notice entitled "CONSOLIDATED CAPITAL INCOME TRUST'S NOTICE UNDER § 546(b) IN LIEU OF SEIZURE OF PROPERTY OR COMMENCEMENT OF ACTION." CCIT, of course, could not seize the property or take any legal action, since it was stayed under § 362 of the Code. Thus, the notice was filed under 11 U.S.C. § 546(b).

CCIT contends all rents received after filing its § 546(b) notice are rents in which it has an interest. Thus, it argues the rents constitute "cash collateral" under 11 U.S.C. § 363(a), and the debtors are proscribed from using the rents without compliance with § 363(c)(2).

The debtors contend CCIT only had an inchoate right to rents until CCIT took some affirmative action to apply for the appointment of a receiver or otherwise took possession of the premises. Since the intervention of bankruptcy occurred before any affirmative act to perfect CCIT's lien was taken, the debtors argue the lien remains inchoate and has not ripened into a choate lien so as fall within the definition of "cash collateral" under § 363(a). Further, it is debtors' position that even the filing of a § 546(b) notice here does not operate to perfect the lien. The basis for this argument, according to the debtors, is that § 546(b) can only apply to perfect a lien which relates back to a date prior to the commencement of bankruptcy. The nature of the lien here does not relate back to a pre-petition date.

CCIT has requested an expedited hearing to clarify earlier orders of this Court directing that cash collateral should not be used without compliance with § 363(c)(2).

The issue is whether CCIT's § 546(b) notice operates to perfect it's previously-inchoate lien in rents so that CCIT now possesses a choate lien, making the rents "cash collateral" governed by § 363 of the Code.

## CONCLUSIONS OF LAW

The rents here are "cash collateral" only if CCIT has a present interest in such rents. 11 U.S.C. § 363(a). The extent to which CCIT has any interest in rents is determined by State law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Although *Butner* was a decision rendered under the Bankruptcy Act of 1898, it has been held that *Butner* is still applicable under the Bankruptcy Code of 1978. *In the Matter of Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984). In this particular matter, the applicable State law is the law of Colorado.

 In Colorado, a mortgagee or assignee of rent who has been granted the right to collect rents upon default acquires no claim to rents until the mortgagee or assignee has taken certain affirmative steps to perfect his lien, such as taking physical possession of the rented premises or requesting the appointment of a receiver. *Fischer v. Norman Apartments*, 101 Colo. 173, 72 P.2d 1092 (1937). Prior to the taking of such affirmative steps, the rents are subject to divestment by the levy of a judgment lien creditor. *Id.* Until some effectual step has been taken by a mortgagee, the right to rentals or income is an inchoate lien. *Megginson v. Hall*, 111 Colo. 104, 137 P.2d 411 (1943).

 No action was taken by CCIT to perfect it's rights in rents before the Voluntary Petitions were filed on September 21, 1984. Thus, the interest of CCIT was inchoate as of that date. There is no protected interest under 11 U.S.C. § 363 until that interest becomes choate. Moreover, the filing of a bankruptcy petition operates as a levy on all property of the debtor for the benefit of the estate. This levy, by operation of 11 U.S.C. § 544(a), has the effect of a levy by a judgment lien creditor and is superior to any inchoate interest of CCIT at the time of the bankruptcy filing.

The question then to be addressed is what was the legal effect of filing a Notice under § 546(b) on September 24, 1984.

The debtors contend that § 546(b) is only applicable where perfection relates back to a pre-petition date, citing *In the Matter of Valairco, Inc.*, 9 BR. 289 (Bankr.N.J.1981) in support of this proposition. *Valairco* involved a suit by subcontract materialmen of *Valairco*, a subcontractor under a construction contract. The suit was brought to have the automatic stay provision of § 362 modified to permit the materialmen to file notices of refusal of payment ("stop notice") pursuant to New Jersey law, or to seek a determination that the automatic stay did not apply to their cause of action. During the course of its opinion, the Bankruptcy Court determined, based upon its reading of the Legislative History, that filing a notice under § 546(b) of the Bankruptcy Code only was effective to perfect a lien which related back to a date that is before the commencement of the case.

It is true the notes of the Committee on the Judiciary, Sen.Rpt. No. 95–989, contain the following statement: "If applicable law requires seizure for perfection, then perfection is by notice to the trustee instead. The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case." Sen.Rpt. No. 95–989, 95th Cong. 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872.

The Code, as ultimately passed in § 546(b), does not contain any specific restriction to liens which relate back to a pre-petition date. That section reads, in *pari materia,* as follows:

"If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by law

for such seizure or commencement." 11 U.S.C. § 546(b).

The court in *Valairco* went on to recite that in order to employ subsection (b) of § 546, "an interest in property" must exist. Under the circumstances of that case, there was found to be no such interest established, since the matter under consideration was a statutory lien and, under 11 U.S.C. § 545, a trustee may avoid a statutory lien that is not perfected or enforceable against a bona fide purchaser on the date of the filing of the petition. The court then found that a trustee cannot defeat a statutory lien which relates back to an earlier date, but statutory liens which do not relate back are susceptible to the trustee's avoiding power.

The New Jersey stop-notice did not relate back to an earlier date. Thus, the court determined that the State law of New Jersey afforded no protection to the holder of a stop-notice lien perfected subsequent to the intervention of bankruptcy.

The court also explained the rationale of its interpretation of § 546 as being an effort to avoid any secret liens which might occur if the plaintiffs were to prevail in that matter.

It is noted in the instant case that the secured creditors' interest is predicated, not upon a statutory lien, but upon a contract right which was the subject of a clearly written contract, recorded as notice to the world shortly after consummation of the agreements. There is nothing "secret" about the lien, and there is nothing necessarily recorded of record when the steps imposed by law are taken to perfect the secured creditors' possessory rights. Further, the language of the Code, as ultimately promulgated, is not totally consistent with the aforementioned statement from the Senate Judiciary Committee.

To rule for the debtors, I would have to find that § 546(b) never applies to an Assignment of Rents wherein perfection is attempted by the post-petition notice under that section. This is not consistent with the language of § 546(b) of the Code.

Such an interpretation would not be consistent with *Butner v. United States, supra,* wherein the court, in discussing the decisions application to real property secured creditors, stated as follows:

"What does follow is that the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued...

"At the same time our decision avoids the opposite in equity of depriving a mortgagee of his state law security interest when bankruptcy intervenes." *Butner v. U.S., supra,* at pp. 56–57, 99 S.Ct. at pp. 918–919.

The court in *Butner* then went on to observe that a bankruptcy judge may permit the secured creditor to satisfy the state law requirement that some affirmative action be taken to perfect an interest in rents by either sequestering those rents or authorizing immediate state law foreclosures. Both of these acts by the bankruptcy court would, of course, be accomplished post-petition and would not "relate back" to prior rents.

The Bankruptcy Court in the Southern District of New York, applying New York law, held in *In re Sydney Kent, et al,* 5 BCD 47, 19 CBC 474 (Bankr.S.D.N.Y.1978), that the application by a mortgagee to the bankruptcy court for leave to foreclose its mortgage and to obtain the appointment of a receiver preserved it's right to the rents of the mortgaged property from the time its adversary proceeding was commenced.

The Fifth Circuit Court of Appeals, *In the Matter of Village Properties Ltd., supra,* noted the predicament in which a mortgagee finds itself in seeking "adequate protection" under § 363(e) of the Code when it has not taken affirmative action, pre-petition, to perfect its interest. "The logical solution", said the court, is to perfect the "mortgagee's interest when he petitions for sequestration, a receiver, adequate protection, etc." *In the Matter of Village Properties Ltd., supra,* at page 446. The petition for "adequate protection" must, of course, be a post-petition perfection.

The *Village Properties* court also noted "that Congress has recognized the wisdom of allowing a security interest in rents to be perfected through mere notice," citing § 546(b) as the Code provision to which it referred. *In the Matter of Village Properties Ltd., supra,* at page 447. This seems more consonant with good sense than holding that notice of § 546(b), which is *a fortiori* post-petition, can never apply to an Assignment of Rents and that bankruptcy cuts off the mortgagee's rights to ever perfect the Assignment of Rents by virtue of the fortuitous event of bankruptcy. Such a holding would certainly operate to divest the secured creditor in federal bankruptcy court of the same protection he would have under state law if no bankruptcy had ensued, all in direct contravention of the pronouncement of the United States Supreme Court in *Butner v. U.S., supra.*

██ On the basis of *Butner v. U.S., supra, In the Matter of Village Properties Ltd., supra,* (accord, *In re Sydney Kent, et al., supra* ), the clear language of 11 U.S.C. § 546(b) and § 552(b), Colorado state law and fundamental fairness, it seems to me that the filing of notice under § 546(b) of the Code, post-petition, is the most a secured creditor can do in the face of the automatic stay imposed by 11 U.S.C. § 362. This notice constitutes sufficient perfection of the secured creditor's interest in rents subsequent to that notice so as to preserve its priority in future rents. The creditor makes no claim on rents accuring before the 546(b) notice was filed. That appears to be an appropriate position, since, in my view, the right to those rents would not have been perfected and would not constitute cash collateral.