In re Robert E. "Bob" SAMPSON and Bonnie Jean Fields Sampson, Debtors.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**William L. LANCASTER, III, Trustee and Home Federal Savings & Loan Association of Upper East Tennessee, Defendants.**

Bankruptcy No. 3–83–01912.
Adv. No. 3–85–1073.

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 30, 1986.

Morton, Lewis, King & Krieg, M. Edward Owens, Jr., Knoxville, Tenn., for Federal Deposit Ins. Corp.

Paul J. Sherwood, Johnson City, Tenn. for Trustee.

Myers, Johnson & Givens, M. Stanley Givens, Johnson City, Tenn., for Home Federal Sav. and Loan Ass'n of Upper East Tennessee.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

I

The debtors commenced a chapter 7 case on December 9, 1983. On July 5, 1985, the plaintiff Federal Deposit Insurance Corporation commenced this adversary proceeding to determine the validity, extent and priority of an asserted lien on rental income generated by two parcels of real property encumbered by certain deeds of trust.

When the debtors filed their joint petition in bankruptcy they owned two parcels of rent-producing real property. One parcel is located on Springbrook Drive in Johnson City, Tennessee. The other parcel is located on Oakland Avenue. The defendant trustee has collected monthly rent on the Springbrook Drive property since January 11, 1984. The trustee has also been collecting rental payments on the Oakland Avenue property since March 2, 1984.

After FDIC commenced this adversary proceeding naming as defendants both the trustee and Home Federal Savings and Loan of Upper East Tennessee, Home Federal answered and filed a cross-claim against the trustee on August 12, 1985.

Home Federal's claim is based on notes secured by deeds of trust. Home Federal has a first deed of trust (recorded May 3, 1978) and a second deed of trust (recorded November 13, 1978) on the Springbrook Drive property. Both deeds of trust contain the following provision regarding rent:

*Assignment of Rents; Appointment of Receiver; Lender in Possession.* As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

Home Federal also has a first deed of trust (recorded October 19, 1976) on the Oakland Avenue property. This deed of trust contains the following provision regarding rent:

It is a condition of this conveyance that the parties of the first part are to retain possession of the property hereby conveyed, and are to receive and use the rents, issues and profits therefrom until default in the performance of any of the covenants and agreements herein contained, that from and after such default the rents, issues and profits shall be due and payable to the party of the third part, its successors or assigns, if it make demand for same; and the party of the third part, its successors or assigns, shall be entitled upon demand to take immediate possession of said property, and to lease, control and manage the same, and collect the rents and profits arising therefrom and apply the same, less all costs and expenses reasonably incident to the taking of possession, collection of rents and necessary upkeep of the property, to the payment of the indebtedness hereby secured, without liability further than to account for rents and profits actually collected. Upon such contingency first parties, or any party holding by, through or under them, shall be removable by said third party by unlawful detainer proceedings.

FDIC's claim is based upon two notes (secured by deeds of trusts) which FDIC purchased in its corporate capacity following the 1983 closure and appointment of a receiver of the First Peoples Bank of Washington County. FDIC's asserted security interest in the rents in question is based upon the two deeds of trust, recorded respectively in January 1980 and April 1982. Both deeds of trust grant a security interest in the Springbrook Drive property. The April 1982 deed of trust also grants a security interest in the Oakland Avenue property. Both deeds of trust recite the prior deeds of trust forming the basis of Home Federal's claim. Both also contain the following provision regarding rent:

It is a condition of this conveyance that the party of the first part shall retain possession of the property hereby conveyed until there is a default under this deed of trust, or under the note secured hereby; after such default, the party of the second part or his successors, or the holder of said note, shall have the right to collect the rents, issues and profits of the property. In the event of such default, the party of the second part, or the holder of said note, in addition to the power of sale and other rights as provided above, shall have the right to proceed in a court of equity to foreclose this deed of trust and shall be entitled to the appointment of a receiver to collect the rents, issues, and profits of the property pending such sale.

The trustee and Home Federal have admitted that in March 1985 FDIC made demand on the trustee for payment of the rents he had collected on the Springbrook Drive property.[1] *See* Request for Admissions, No. 13 (filed by FDIC on Sept. 6, 1985, and not subsequently answered by trustee or Home Federal). Bankruptcy Rule 7036.

## II

In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) the United States Supreme Court held that determinations in bankruptcy proceedings regarding the validity and extent of a mortgagee's security interest in the rents and profits of mortgaged property should be resolved by reference to state law. *Butner* rejected a minority view that had adopted a uniform federal approach (based on the perceived demands of equity) which had recognized a mortgagee's security interest in rents without regard to what affirmative steps applicable state law might require of the mortgagee in order to perfect an interest in the rents. *Butner,* 440 U.S. at 51–54, 99 S.Ct. at 916–17. *See*

generally 4A *Collier on Bankruptcy* § 70.16[7] at 167–69 (14th ed. 1978). Pointing out that the rejected minority approach "affords the mortgagee rights that are not his as a matter of state law," the court noted that "[t]he rule we adopt avoids this inequity because it looks to state law to define the security interest of the mortgagee." *Butner,* 440 U.S. at 56, 99 S.Ct. at 918.

In *Wolters Village, Ltd. v. Village Properties Ltd. (In re Village Properties, Ltd.)* 723 F.2d 441 (5th Cir.1984), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984), the Court of Appeals for the Fifth Circuit held that "the *Butner* decision remains unscathed by the new Bankruptcy Code." *Village Properties,* 723 F.2d at 445. Thus, in *Village Properties* the court looked to state law which provided that "an assignment of rentals becomes operative when the mortgagee 'obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, *or takes some other similar action.*' [citations omitted]" *Village Properties,* 723 F.2d at 446 (emphasis in original).

In *Village Properties,* after the commencement of a chapter 11 case the holder of a deed of trust filed a complaint to modify the automatic stay to permit foreclosure on his deed of trust. The bankruptcy court permitted foreclosure. However, between filing of the chapter 11 petition and the foreclosure sale the mortgagee took no steps to request the appointment of a receiver, an order of sequestration, or an order of impoundment respecting the rents from the property. Nonetheless, the mortgagee subsequently attempted to assert a claim to the rents collected between default and the foreclosure sale. Since the mortgagee had made no attempt after the commencement of bankruptcy to take the appropriate action respecting the rents (having only petitioned for relief from the stay

---

**1.** Home Federal also asserts in its pleadings and brief that it made informal inquiries and requests for the turnover of the rent proceeds. However, Home Federal offered no testimony or evidence at trial substantiating this assertion.

Home Federal further asserts in its brief that it filed a proof of claim in the debtors' bankruptcy case. The claims register in the debtors' bankruptcy case does not reflect the filing of any proof of claim by Home Federal.

to foreclosure on the realty itself) the court of appeals held that the mortgagee had not perfected an interest in the rents. The court noted, however, that the *filing* of a petition for sequestration, a receiver, adequate protection, etc. would be sufficient to perfect a mortgagee's interest in rents. *Village Properties,* 723 F.2d at 446. In so concluding, the court pointed to § 546(b) of the Bankruptcy Code and noted "that Congress has recognized the wisdom of allowing a security interest in rents to be perfected through mere notice." *Village Properties,* 723 F.2d at 447.

Section 546(b) provides:

The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C.A. § 546(b) (West 1979).

In *Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. 1008 (D.Colo.1985), *aff'g* 46 B.R. 510 (Bankr.D.Colo.1984) the district court held that the beneficiary of a deed of trust with an assignment of rents could perfect an interest in rents by filing a "Notice Under § 546(b) In Lieu of Seizure of Property or Commencement of Action." The court concluded that "the language of the statute is unambiguous and plainly applies to this situation if a mortgagee's [perfection of a] security interest in rents 'is effective against' the previously acquired interest of a trustee, who has the powers of a hypothetical judgment lien creditor." [2] *Colter,* 47 B.R. at 1011. The court found that even after levy and execution on the mortgagor by a judgment lien creditor, a mortgagee with an assignment of rents pre-dating the levy would be able to perfect an interest in rents by appointment of a receiver and would have a claim superior to the lien creditor as to rents accruing after such perfection.[3]

■ Thus, in accordance with the above authorities, in order to determine the validity and extent of the security interest of a mortgagee in the rents of the encumbered property, this court will refer to state law. If state law requires seizure of the property or commencement of an action to perfect an interest in the rents, that perfection may be accomplished by notice under § 546(b) after the filing of the bankruptcy petition.

In Tennessee, in some cases seizure or commencement of an action has been required of a mortgagee in order to perfect an interest in rents under certain deeds of trust provisions. *See Cumberland Trust Co. v. Bart,* 15 Tenn.App. 138 (1932) (where deed of trust gave no lien upon rents of realty and provided only that beneficiary,

2. *See also Santa Fe Federal Savings & Loan Association v. Oak Glen R–Vee,* 8 B.R. 213 (Bankr.C.D.Cal.1981) (postpetition filing of complaint to require debtor to cease spending, to segregate, and to account for rents was sufficient to enable court to sequester for benefit of holders of deed of trust rents accruing after filing of such complaint). *Contra Exchange National Bank of Chicago v. Gotta (In re Gotta),* 47 B.R. 198, 202 (Bankr.W.D.Wis.1985) (holding § 546(b) not applicable to permit postpetition perfection of mortgagee's interest in rents, concluding that § 546(b) exception to automatic stay was intended to permit only the postpetition perfection of liens which under state law would relate back prepetition in effectiveness).

3. The district court reached this conclusion noting that "the issue has apparently not arisen in the Colorado courts." *Colter,* 47 B.R. at 1011. Similarly, although not aware of any Tennessee authority deciding this issue, this court agrees with the conclusion of the court in *Colter. See Gilman v. Illinois and Mississippi Telegraph Co.,* 1 Otto 603, 91 U.S. 603, 23 L.Ed. 405 (1876) (railroad company's mortgage of road and its income did not transfer income to mortgagee until mortgagee took possession and, until then, income belonged to railroad company and was subject to claim of judgment lien creditor of railroad).

in the event of foreclosure, would be entitled to a receiver to collect rents, beneficiary had no lien on rents until institution of foreclosure proceedings); *Morgan Bros. v. Dayton Coal & Iron, Co.*, 134 Tenn. 228, 183 S.W. 1019 (1916) (under mortgage by going concern of realty, plant and equipment, with its income and profits, and giving mortgagee the right to enter, take charge, and operate it to discharge mortgage debt, the income and profits do not pass under the lien of the mortgage until default and trustee's possession, and lien attaches only to income and profits arising after default and such possession).

There is, however, authority in Tennessee that something less than "seizure of property ... or commencement of an action" may be sufficient to perfect an interest in rents under certain deed of trust provisions respecting rents. In *Grannis-Blair Audit Co. v. Maddux*, 167 Tenn. 297, 69 S.W.2d 238 (1934) the deed of trust provided that the mortgagor was entitled "to retain possession of the property ... and ... to receive and use the rents, issues and profits therefrom until default." The deed of trust further provided that "from and after any such default the rents, issues and profits shall be due and payable to the Trustee or beneficiary; if either makes demand for same." The mortgagee notified the mortgagor's rental agent of default and demanded payment of the rents under these provisions. Subsequently, a creditor of the mortgagor attempted to garnishee the rents held by the rental agent. In holding that the mortgagee was entitled to the rents, the Tennessee Supreme Court acknowledged the general rule that a mortgagor in possession was entitled to rents, but observed:

> [I]n view of the explicit provision in the trust mortgage before us giving to the trustee the right to the rents upon default in the payment of interest or principal of the debt, upon making demand therefor, neither entry, nor foreclosure

proceedings, was a necessary prerequisite, this agreement taking the case out of the general rule.

69 S.W.2d at 238–39.

Significantly, however, in *Grannis-Blair* the mortgagee demanded payment of the rents not from the mortgagor but from the party owing the rents to the mortgagor.

FDIC's deeds of trust provide that the mortgagor shall retain possession of the property until default and that "after such default ... [FDIC] shall have the *right to collect* the rents, issues and profits of the property." (emphasis supplied). There is no proof that FDIC notified the tenants of the respective properties of its interest in the rents or its right to collect the rent. This court is not persuaded that *Grannis-Blair* may be said to stand for the proposition that mere notice to or demand upon the mortgagor for payment of rents (rather than upon the rental agent) would have been sufficient to perfect the mortgagee's security interest in rents against the judgment creditor's garnishment of the rental agent's debt for rent.

The court must be guided by the United States Supreme Court's mandate in *Butner* that in matters respecting a mortgagee's assertion in bankruptcy of a security interest in rents of mortgaged property "the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918. That policy clearly finds further expression in the enactment of § 546(b) after *Butner*. However, the court must also be guided by the policy enunciated in *Butner* that the mortgagee should not be afforded in bankruptcy "rights that are not his as a matter of state law." *Butner*, 440 U.S. at 56, 99 S.Ct. at 918. Even assuming that the holding of *Grannis-Blair* applies to the rent provision in FDIC's deeds of trust,[4] the

---

**4.** The court notes the even greater similarity between the *Grannis-Blair* provision and the provision in Home Federal's deed of trust on the Oakland Avenue property. However, as previously noted, *supra* note 1, no testimony or evidence was submitted from which this court could find that Home Federal asserted any right

court is not persuaded that FDIC's March 1985 demand was sufficient to perfect its interest in the rents under state law against the trustee in bankruptcy exercising the rights of a judgment lien creditor.[5]

The terms of the deeds of trust and state law, however, did at least afford FDIC the power to perfect its interest by "seizure of ... property or commencement of an action" by means of the appointment of a receiver to collect the rents. Thus, FDIC's interest could be perfected "by notice within the time fixed by such law for such seizure or commencement." 11 U.S.C.A. § 546(b) (West 1979). The critical issue, then, is the question of what constitutes "notice" under § 546(b). FDIC contends that it perfected its interest either by (1) filing its proof of claim with the deeds of trust attached, (2) its March 1985 demand upon the trustee for payment of the Springbrook Drive property rents, or (3) the filing of this adversary proceeding.

The court holds that FDIC did not perfect an interest in the rents "by notice" within the meaning of § 546(b) until it filed its complaint in this adversary proceeding to determine the validity and extent of its lien. The mere filing of a proof of claim with the deeds of trust attached, without any indication of an intention to assert an interest specifically in the rental income of the property, does not rise to the level of notice which this court believes § 546(b) to envision. Nor does the making of the March 1985 telephone demand on the trustee suffice. Although § 546(b) provides little guidance as to what constitutes the requisite notice, it is noteworthy that the

predecessor to this statute provided that statutory liens requiring perfection by seizure of property "shall instead be perfected by filing notice thereof with the court." 11 U.S.C.A. § 107(b) (repealed 1978). The court holds that § 546(b) similarly envisions and requires the filing of a notice with the court. See, e.g., Consolidated Capital Income Trust v. Colter, Inc.

Thus, on the evidence before the court in the instant case the first act sufficient to constitute the perfection of a security interest in the rents was the filing by FDIC of this adversary proceeding on July 5, 1985. Such perfection would relate only to those rents accruing after that time. The rights of the trustee in bankruptcy are superior as to those rents already collected by the trustee prior to the commencement of this action.

Having determined the extent of the bankruptcy estate's interest in the rents, the court need not go further. The court notes that Home Federal filed a notice sufficient for perfection under § 546(b) when it filed its cross-claim against the trustee herein. However, as any priority dispute between Home Federal and FDIC does not affect the estate in bankruptcy, this court will leave the resolution of that matter to another, more appropriate forum.

The trustee will be ordered to pay into the registry of this court, after deduction of appropriate compensation under 11 U.S.C.A. § 326 (West 1979), those funds representing the rents collected on the Springbrook Drive and Oakland Avenue properties after the commencement of this adversary proceeding on July 5, 1985. The

to the rents prior to cross-claiming against the trustee in this adversary proceeding.

The court further notes that the relevant provision in Home Federal's deed of trust on the Springbrook Drive property is markedly different. That provision provides that the mortgagor shall have the right to collect and retain the rents prior to acceleration or abandonment and that upon acceleration or abandonment, the mortgagee "in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property." C.f. Morgan Bros v. Dayton Coal & Iron, Co.

5. The court wishes to clarify the exact nature of its inquiry here. If state law permits perfection of an interest in rents by something less than seizure of property or commencement of an action, § 546(b) preserves the mortgagee's right to perfect its interest by that means after the commencement of bankruptcy. That inquiry, however, is separate and apart from what is required to perfect "by notice" under § 546(b) an interest requiring for perfection under state law "seizure of ... property or commencement of an action." See infra.

funds will remain deposited therein pending resolution of the dispute between Home Federal and FDIC by the parties' agreement or by the judgment of an appropriate tribunal.