CUMBERLAND TRUST COMPANY et al. v. MORRIS BART et al.

Eastern Section. April 16, 1932.

Petition for Certiorari denied by Supreme Court, October 14, 1932.

Green, Webb & Green and W. A. DeGroat, all of Knoxville, for appellants.

J. Pike Powers, Jr., and I. B. Finklestein, both of Knoxville, for appellees.

FAW, P. J.   This record presents a contest between a beneficiary and trustee under a trust deed to secure a debt, on the one hand, and the maker of the trust deed, on the other hand, with respect to the ownership of certain rents collected from the trust property by a receiver appointed by the Chancellor in this cause.

The Chancellor held that the defendant Morris Bart, the maker of the trust deed, is entitled to the rents in controversy, and, from the decree so adjudging the complainants, Cumberland Trust Company and W. A. DeGroat, trustee, prayed an appeal to the Supreme Court which was granted by the Chancellor and perfected by the appellants, but the Supreme Court transferred the case to this court, where it has been heard and taken under advisement by the court.

The controversy involved in this appeal arose out of the facts which will now be stated.

Defendant Morris Bart filed a voluntary petition in bankruptcy in the United States District Court at Knoxville and was by that court duly adjudicated a bankrupt on November 22, 1928, and one Adolph A. Schmid was thereupon appointed trustee of said bankrupt's estate. Thereafter, viz: on May 25, 1929, the bankrupt, Morris Bart, was, in said bankruptcy proceeding, duly discharged from the payment of all his provable debts "as of the date of his adjudication, November 22, 1928."

At the time he filed his aforesaid petition in bankruptcy, Morris Bart was in possession of certain city lots fronting on the east side of Gay Street in Knoxville, Tennessee, to-wit: Street Numbers 402, 404, 406, 408, and 410, with a building thereon occupied by tenants for business purposes and known as the Newcomer Building and Annex,

which property passed into the possession of the aforesaid trustee, Adolph A. Schmid, and was in his possession, as a part of the estate of the bankrupt, Morris Bart, until February 28, 1929. On February 14, 1929, Schmid, the trustee, reported to the bankruptcy court that the property known as the Newcomer Building and Annex (which general description includes the lots on which the building stands) was encumbered with a vendor's lien and mortgage debts to an aggregate sum of about $300,000, and that, in the opinion of the trustee, said property would not sell for a sum in excess of $250,000, and that it was, therefore, advisable that he, as trustee, decline to administer said property, and abandon same. After notice to all the creditors of the bankrupt, the aforesaid report and recommendation of the trustee was adopted by the Referee in Bankruptcy on February 28, 1929, without objection on the part of complainants herein or any other creditors, and Adolph A. Schmid, the trustee, thereupon abandoned the possession of said Newcomer Building and Annex, and since that time he has disclaimed title thereto.

On the following day, viz: March 1, 1929, the Cumberland Trust Company, a Tennessee corporation, and W. A. DeGroat filed the present bill against Morris Bart and wife Sadie Bart, alleging that on May 9, 1928, defendants Morris Bart and wife executed to complainant W. A. DeGroat, trustee, a deed of trust upon certain real property described in the bill (and which is the same property to which we have referred as the "Newcomer Building and Annex") for the purpose of securing a note to complainant Cumberland Trust Company in the sum of $37,125, dated May 9, 1928, and due one year after its date; that said deed of trust provides that the defendants shall pay all the taxes which may be lawfully assessed against the said premises before the same become delinquent, and that a failure to pay said taxes and exhibit the tax receipts to the beneficiary shall, at the option of the beneficiary, render the entire indebtedness due and payable, and that said deed of trust further provides that in the event the defendants shall be in default for a period of thirty days in the payment of interest on the vendor's lien notes, then all the indebtedness therein described shall become due and payable.

Complainants further allege in the bill that the premises conveyed in said trust deed are encumbered by a vendor's lien in favor of Mrs. Harriott W. Ransom for a balance, as complainants understand, of $145,000, and that the defendants have failed to pay the interest thereon as it became due, and that the indebtedness to Mrs. Ransom is also long past due.

It is further alleged in the bill that complainants hold second liens or mortgages upon the above described property to the extent of approximately $150,000, which liens are inferior to the aforesaid

vendor's·lien in favor of Mrs. Harriott W. Ransom for approximately $145,000; that recently the defendant Morris Bart entered into voluntary bankruptcy in the United States District Court at Knoxville, Tennessee, and has been so adjudged; that said Morris Bart is insolvent and unable to pay either the principal or the interest of the indebtedness resting upon the said property, and that he is unable to pay the taxes which have become long since delinquent.

The complainants further allege in their bill that the bankrupt court, realizing that the recognized liens upon said property exceeded the value thereof, declined to administer upon said property, and has thereby left the holders of the liens to their legal remedies; that the report of the trustee in bankruptcy showed that the recognized liens against the said property amount to at least $300,000 and that the property is not worth exceeding $250,000, and in view of this fact and of the insolvency of the defendant Morris Bart, and in view of the fact that the bankrupt court has declined to take over the said property and administer the same, there is now no one to rent the said property and collect the rents, and in view of the fact that it will be necessary to apply all the rents that may be due and collectible upon the secured indebtedness in order to secure full payment thereof, that it is necessary to appoint a receiver to collect and hold the said rents pending the foreclosure proceedings which are now or will very shortly be instituted for the sale of the said property.

After the usual prayer for process and waiver of answer under oath, the prayer of the bill is as follows:

"That pending the foreclosure of the liens upon the said property (and complainants allege that they have the right to either foreclose by advertising for 30 days and selling under their trust deed, or by foreclosure sale in the courts, either of which methods will necessarily take anywhere from 30 to 60 days leaving the property in the meantime without any one to look after it and collect the rents), it is necessary to immediately appoint a receiver for the purpose of looking after and preserving the property, and collecting the rents therefrom. They, therefore, pray for the immediate appointment of a receiver and that he may be instructed to collect the rents and hold the same pending the foreclosure of the property under the liens thereon."

Complainants also "pray for general relief," and they state that "this is the first application for the appointment of a receiver in this case."

On the day the complainants filed their foregoing bill (March 1, 1929) an order was entered in the cause as follows:

"In this cause, the complainants having this day presented to the court a bill, which is sworn to, praying for the appointment

of a receiver to take care of the rent and collect the rents arising from the property described in the bill:

"And it appearing to the court from the allegation of the bill that this is a proper case for the appointment of a receiver, the court is pleased to appoint H. T. Kern receiver, under a bond of $5000; who, upon the execution of said bond, will at once take charge of the property described in the bill and collect the rents arising therefrom and hold the same pending the further orders of the court."

The receiver thus appointed made bond as directed, took possession of the Newcomer Building and Annex and operated same and collected rents therefrom until the confirmation of a sale of said property, made pursuant to decrees of the Chancery Court of Knox County in a suit brought by Harriott W. Ransom for the enforcement of the aforementioned vendor's lien on said property. The record is indefinite as to the total amount of rents the receiver collected from said building. The record shows that up to May 24, 1929, the receiver, H. T. Kern, had collected rents amounting to $4,827.90, and, after deducting the expenses of operating the building, had on hand $3342.07, with all bills paid to that date, but on the day last named the receiver was allowed $200 on account of compensation for his services, thus leaving a fund of $3142.07 in his hands.

It appears by stipulation of record that the receiver appointed in this case remained in possession of the Newcomer Building and Annex from March 1, 1929, to July 1, 1929, but the state of his accounts after May 24, 1929, is not disclosed by the record before us, further than the necessary inference from the recitals of the final decree that there is a fund in the hands of the receiver which had accrued from rents, and which is the subject-matter of this litigation, but the amount of which is not mentioned.

On September 26, 1929, defendant Morris Bart filed an answer to complainant's bill, in which answer he admitted the execution by him of a deed of trust to complainant W. A. DeGroat upon the property described in the bill to secure a note to complainant Cumberland Trust Company for "certain indebtedness," which deed of trust was inferior to the vendor's lien mentioned in the bill. Defendant did not admit that the provisions of the deed of trust were correctly stated in the bill, but on this point defendant said that "the deed of trust itself is the best evidence of the recitations, conditions and terms thereof, and this defendant expressly refers to it as to its provisions."

Defendant alleged in his answer that the property described in said trust deed had been sold pursuant to decrees of the Chancery Court of Knox County in proceedings for the foreclosure of the aforesaid ven-

dor's lien in favor of Mrs. Harriott W. Ransom; that complainant's mortgages were inferior to said vendor's lien, and had, therefore, "come to an end" and are "dead"—having been "shut out" in said foreclosure proceedings.

It may be stated here, by way of parenthesis, that Mrs. Harriott W. Ransom filed a bill in the Chancery Court of Knox County on March 6, 1929—six days after the bill in the instant case was filed—seeking a foreclosure of her said vendor's lien and that case proceeded to a sale, and confirmation thereof, before the answer of defendant Morris Bart was filed herein; that, at the time Morris Bart filed his petition in bankruptcy, complainant Cumberland Trust Company was his creditor to the extent of more than $150,000 secured by seven successive deeds of trust on the Newcomer Building, only one of which deeds of trust was made to complainant W. A. DeGroat, trustee, and that one was the last executed in point of time, and is the one described in the bill in the instant case.

In his answer, defendant Morris Bart recited the history of the proceedings pursuant to his petition in the bankruptcy court substantially as alredy stated herein, and he then stated his contentions with respect to the issues in this case as follows:

"On the 25th day of May, 1929, this defendant shows to the Honorable Court, that he, Morris Bart, Bankrupt, was discharged upon his petition for discharge from all provable debts in the said bankruptcy court by said court as of the date of his adjudication, and the complainant, Cumberland Trust Company and W. A. DeGroat, Trustee, had notice and knowledge of the pendency of said petition in bankruptcy and filed its claim in the bankruptcy court for all the indebtedness secured by the various mortgages and deeds of trust which it held from this defendant covering an indebtedness of something in the neighborhood of $153,000. The indebtedness due the Cumberland Trust Company and H. L. Dulin was listed in the schedules in said bankruptcy case filed in the District Court of the United States on the first day of December, 1928.

Upon the order of the bankruptcy court excusing the trustee from administering upon said property, the title became vested in this defendant Morris Bart, and upon the discharge of this defendant Morris Bart in bankruptcy from his provable debts as of the 22nd day of November, 1928, the indebtedness of the complainant was barred. All right of the trustee to collect the rents of the property involved in this suit ended upon his being excused from administering thereon, and the rights of the creditors to the said rents thereupon came to an end.

The defendant admits that he was insolvent and that he had not been able to pay the taxes upon the property, and that they had accumulated and were delinquent for some time. The exact amount thereof can be ascertained from the tax records, if material.

There was nothing in any of the mortgages executed by Morris Bart to W. A. DeGroat, Trustee, or any other trustee, for the benefit of Cumberland Trust Company, giving a lien upon the rents of the said buildings except perhaps said mortgages providing that if the beneficiary therein began foreclosure proceedings he might apply for the appointment of a receiver to collect the rents. The Cumberland Trust Company, or holders of said notes under the said inferior mortgages to the vendor's liens, at no time, by any procedure in or out of court, undertook to foreclose the second mortgages, and this defendant avers that they had no lien upon the rents accruing after the property was excused from administration in bankruptcy, and that all rents which did accrue after the trustee was excused from administering upon the property became the property of Morris Bart, and inasmuch as the debt secured by said inferior mortgages of the complainant was barred by the discharge in bankruptcy of Morris Bart in said case, the complainant having no liens upon the rents and not having started foreclosure proceedings, and the complainant's debt having been barred as of the date of adjudication, aforesaid, complainant cannot in this suit impound the rents to secure a barred indebtedness, the second mortgages or inferior mortgages of the Cumberland Trust Company being dead by reason of the foreclosure of the vendor's lien in favor of Mrs. Ransom, and the complainant having been shut out there of all lien and the debt sued on being barred. Complainant is not entitled to the rents which accrued after the property was excused from administration in the bankruptcy court under this suit, it not having furthermore sought in this suit to foreclose the second or inferior mortgages executed by this defendant for its benefit. This defendant avers that he had a right to collect the rents himself, and that the said rents having been collected by the receiver in this case, are his property and that the complainant has no lien upon them which is valid, by reason of the facts hereinbefore set forth, the complainant not having sought foreclosure, the rents having been accrued after the property was excused from administration in the bankruptcy court and complainant's debt having been barred and the complainant's liens having been shut out by the foreclosure of the vendor's lien.

Wherefore, this defendant prays that the complainant's suit be dismissed and an order be entered herein directing the receiver to pay over to this defendant the funds in the receiver's hands in this cause.

And now having fully answered, the defendant prays to be hence dismissed.''

Subsequent to the filing of defendant's answer, it was amended, by leave of the court, so as to add thereto the following:

''Defendants aver that in the case of Harriott W. Ransom, Executrix and Trustee, v. Knoxville Investment Corporation et al.—No. 23365—on the rule docket of this honorable court, the property involved in this suit, as described in the original bill, was involved in that case in an effort to enforce a vendor's lien held by the complainant therein for unpaid purchase money; that Morris Bart and wife, Sadie Bart, were parties defendant in the said suit and the defendant Cumberland Trust Company was likewise made a party defendant. The original bill in said case alleged that the Cumberland Trust Company had the mortgages on the property, which are set forth, and held the notes on the property, which are sued upon in the instant case. All of the parties interested were before the court in that cause, together with the property and the said notes and mortgages of the complainant herein, which were filed in said cause and proven. No application for receiver was made in said suit. The property was sold for the satisfaction of the vendor's lien and all of the rights and interests of the parties were worked out therein, and all of the decrees, orders and proceedings in said case are now plead as res adjudicata against the complainant in this suit. No cross bill was filed against the defendants Morris Bart and wife in said case, although they were before the court, and the property was sold in said case and the final decree adjudicating the rights of the parties was entered therein. The said defendants allege that the complainant is therefore barred and estopped from further proceeding against the defendants Morris Bart and wife, Sadie Bart.''

It is recited in the final decree below that the case was heard ''upon the original bill of the complainants, the answer of the defendants, the deposition of Morris Bart, the agreed statement of facts, including the deeds of trust and promissory notes taken and filed in the case of Harriott W. Ransom, executrix, etc., v. Knoxville Investment Corporation, No. 23365, on the Rule Docket of the Chancery Court of Knox County, Tennessee, and the pleadings and process and decrees in said case, showing that Morris Bart and wife were parties defendant therein, and the answer of the Cumberland Trust Company filed

in said case, together with mortgages of the Cumberland Trust Company and notes which the same secure, and upon briefs and argument of counsel for both parties," upon consideration of all which it was ordered, adjudged and decreed by the court that the allegations of the complainant's bill are fully met by the answer and the amendment to the answer allowed at the time of the trial and are not sustained by the proof in the case, and the court is of opinion that the merits of the case are with the defendant. The court thereupon further decreed that the bill of complainants be dismissed and the receiver be discharged, and that "the defendant Morris Bart is entitled to the rents in the hands of the receiver, which shall be paid into court herein."

However, after the grant of an appeal from the foregoing decree, the Chancellor ordered that "the funds having been deposited at interest by the receiver, will be held by the receiver pending the appeal, he holding a certificate of deposit in the East Tennessee National Bank therefor."

In his deposition, defendant Morris Bart testified to the facts stated in his answer with respect to his petition in bankruptcy and the subsequent proceedings theron, and it was stipulated of record that "in order to save costs that it is not required that certified copy of the schedules, petition in bankruptcy, application for discharge and order of discharge be procured and filed in this case, it being admitted that they are correctly set forth as hereinabove set out," (as set out in the deposition of defendant Morris Bart).

It was further stipulated of record below that "at the time the instant suit was brought, the suit of said Harriott W. Ransom to foreclose the first lien (a vendor's lien) on the same property was not brought, nor pending, in this court, but was filed a few days thereafter; and that complainants herein were made parties defendant thereto, and so were the defendants Morris Bart, et ux. No cross bill against Morris Bart was filed therein and the property mentioned herein was sold therein and said case had been finally adjudicated and disposed of by final decree foreclosing the vendor's lien."

Through assignments of error the appellants—complainants below —challenge as erroneous the rulings of the Chancellor adverse to them in the final decree.

Counsel for both parties have proceeded in their briefs and arguments upon the assumption that the facts are undisputed.

The argument of counsel in support of appellant's assignments of error is directed to four propositions which they state as follows:
(1) "While the defendant Bart, after he had been adjudicated a bankrupt, was no longer personally liable for complainant's debt, his

bankruptcy did not affect complainant's lien;"

(2) "Complainant's trust deed creates an express lien on the rents as well as on the land;"

(3) "The mortgage securing complainant's debt in any event created an equitable lien on the rents;"

(4) "Complainants are not estopped and res adjudicata does not apply" as claimed by defendant Morris Bart in the amendment to his answer.

Our views with respect to the questions thus raised on behalf of the appellants will now be stated.

Rents and profits are as much property as the estate out of which they arise, and as such they are equally the subject of assignment, or encumbrance by way of mortgage or conveyance in trust to secure debt. 41 C. J., p. 375; Annotation, 4 A. L. R., 1405; Annotation, 55 A. L. R., 1020.

If complainant Cumberland Trust Company had a valid fixed lien upon the rents of the Newcomer Building and Annex at the time Morris Bart was adjudicated a bankrupt, such lien was not destroyed or defeated by Bart's discharge in bankruptcy. See Bankruptcy Act of 1898, sec. 67d; Sullivan v. Myer, 137 Tenn., 412, 419, 193 S. W., 124; 3 R. C. L., pp. 320, 322; Rode & Horn v. Phipps, 195 Fed., 414.

But, as we have seen, it is contended on behalf of defendant, and presumably was held by the Chancellor, that complainant Trust Company had no lien upon the rents in controversy.

On the other hand, complainants insist that the aforesaid trust deed of May 9, 1928, to W. A. DeGroat, trustee, "not only pledges the land, but pledges the rents of the land as security for complainant's debt."

Said trust deed conveyed the land therein described, "together with all and singular. the appurtenances and hereditaments thereto belonging," to secure a note for $37,125, due May 9, 1929 (but with provisions for acceleration of maturity upon failure of the debtor to pay taxes before delinquency or upon default for a period of thirty days in the payment of interest on the vendor's lien debt), and provided that, on default in the payment of said note, the trustee would, at the request of the beneficiary, and after advertising for a period of thirty days, sell the property described in the trust deed, for cash, to the highest bidder, for the satisfaction of (1) the expense of executing the trust, (2) taxes and insurance premiums due and unpaid, (3) the principal and interest of the debt secured, and (4) the balance, if any, to be paid to the grantors, their heirs, executors and administrators.

The said trust deed contained further provisions as follows:

"IT IS COVENANTED AND AGREED by and between the Grantors and the Trustee and the Beneficiary, that so long as

any part of the principal or interest indebtedness herein secured shall remain unpaid, the Grantors agree:—

1. The Grantors will execute or procure any further necessary assurance of the title of said premises as they may be reasonably required to do by the beneficiary.

2. The Beneficiary may, if it shall so elect, foreclose this instrument as a mortgage in any court of competent jurisdiction, thru the Trustee, and shall be entitled to the immediate appointment of a receiver for the collection of the rents arising from the premises herein conveyed during the pendency of such foreclosure action; that the right to foreclose this instrument as a mortgage shall be cumulative and shall not be deemed to be a waiver of the right to advertise and sell under the Trustee's advertisement of sale."

Said trust deed contains no pledge of the rents of the property therein described, unless such pledge may be implied from the provision last above quoted.

"A mortgage on real property will not ordinarily embrace the rents, issues, and profits arising from the property unless these are expressly made subject to it." 41 C. J., p. 484. See also Easley v. Tarkington, 5 Baxt., 592; Note, 27 Am. St. R., 793; Winans v. Smith, 199 Iowa, 715; Freedmens Savings & Trust Company v. Shepherd, 127 U. S., 494, 32 L. Ed., 163; Nielson v. Heald, 151 Minn., 181, 186 N. W., 299, 26 A. L. R., 29, 31.

And again: "A mortgage which does not expressly pledge the rents and profits of the mortgaged premises as security for the payment of the debt gives the mortgagee no lien or claim on them, and so long as the mortgagor remains in possession he is entitled to receive them to his own use or to assign them without liability to account to the mortgagee for them." 41 C. J., p. 627, citing a large number of cases from many jurisdictions. See also Easley v. Tarkington, supra; Chadbourn v. Henderson, 2 Baxt., 460.

Complainants insist that the last quoted provision of the aforesaid deed of trust created an express lien on the rents of the Newcomer Building and Annex. We do not think so. Under this provision, the right to a receiver to collect rents was conditioned upon the commencement of a suit, in a court of competent jurisdiction, to foreclose the trust deed as a mortgage—such suit to be brought "thru the trustee," pursuant to an election by the beneficiary to foreclose in this manner. The trust deed did not vest the complainants with the right to have a receiver for the collection of rents except "during the pendency of such foreclosure action." Construing a similar provision in a real estate mortgage, the Supreme Court of Iowa held (and we think correctly) that no lien on the rents was thereby created

until a foreclosure suit was commenced and such receiver appointed. Whitesides v. Morris, 197 Iowa, 211. See also Winans v. Smith, 199 Iowa, 715; The American Bridge Co. v. Heidlebach et al., 94 U. S., 798, 24 L. Ed., 144.

Complainants have at no time sought to foreclose the trust deed in question. They were made defendants to the suit of Mrs. Harriott W. Ransom in which her vendor's lien was foreclosed, but they merely filed an answer in that case and sought no affirmative relief. The complainant in the bill in that case did not seek, and could not properly have obtained, a receiver to collect rents, for it has been held in this State that where a complainant seeks to enforce his vendor's lien a receiver will not be appointed; that it is no part of the contract of sale, either express or implied, that the vendor shall appropriate anything but the land itself by sale for satisfaction of his purchase money. Morford v. Hamner, 3 Baxt., 391.

It is said in 41 C. J. at page 484, that ''a clause authorizing the appointment of a receiver to collect rents and profits upon foreclosure has been held to be, in effect, a mortgage of the rents and profits accruing until the redemption period has expired.'' The sole authority in support of the text just quoted is Townsend v. Wilson, 155 Ill. App., 303. It appears from the opinion in that case that the mortgage there involved contained a clause providing for the appointment of a receiver with power to collect rents after the filing of a bill for foreclosure and until the expiration of the time for redemption, and that such rents, when collected, might be applied toward the payment of the indebtedness secured by the mortgage; and it further appears that the rents there in controversy were collected by a receiver appointed in a foreclosure suit, after the filing of the bill for foreclosure and before the time for redemption had expired.

But it is claimed for complainants that, in any event, the mortgage securing complainant's debt created an equitable lien on the rents. In the course of the argument for complainants in support of the provision just stated, counsel seek to invoke the common law rule that ''a trust deed or mortgage conveys the legal title to the trustee or mortgagee and he is entitled to immediate possession unless the instrument contains a contrary provision'' (Brier Hill Collieries v. Gernt, 131 Tenn., 542, 552, 175 S. W., 560; 19 R. C. L., pp. 313-315), but the legal title to the Newcomer Building and Annex was not vested in either of the complainants at any time, for, according to the record, the legal title was outstanding in other trustees under prior and superior deeds of trust at the time the trust deed of May 9, 1928, was executed to complainant DeGroat for the benefit of complainant Cumberland Trust Company, and was thus outstanding at the time the bill in the instant case was filed; hence we need not consider any

argument which complainants seek to predicate upon the commo.· law right of the mortgagee to oust the mortgagor from possession and in· that manner take the rents and profits of the mortgaged premises. Mayfield v. Wright (Ky.), 54 S. W., 864.

However, it is a well-established principle of equity jurisprudence that where mortgaged premises are insufficient as security, the mortgagor is insolvent, and there is danger of wasting the income· of the estate, the mortgage may operate as an equitable lien on the rents, which lien the mortgagee may enforce by securing the appointment of a receiver pending foreclosure. 41 C. J., p. 628; Bidwell v. Paul, 5 Baxt., 693; Schmid v. Baum's Home of Flowers, 162 Tenn., 439, 75 A. L. R., 261, 37 S. W. (2d), 105, 111, and cases there cited; Note, 27 Am. St. R., 795; Annotation, 4 A. L. R., 1420; Annotation, 55 A. L. R., 1028.

But the rents can be impounded only in a suit to foreclose the mortgage, and as an incident to the foreclosure of the mortgage, and cannot properly be made the subject of an independent suit. Moore v. Knight, 6 Lea., 427, 438-9; Sage v. Memphis & Little Rock Railroad Co., 125 U. S., 361, 31 L. Ed., 694, 699; Farmers Loan & Trust Co. v. American Waterworks Co., 107 Fed., 23, 25.

And in such case the lien of the mortgagee on the rents dates only from the appointment of the receiver, and the receiver's right to collect rents extends only to such as are unpaid at the time of his appointment. Wyckoff v. Scofield, 98 N. Y., 475, 478.

Moreover, an equitable lien on the rents of mortgaged premises (as distinguished from a lien created by express contract) pre-suppose· an existing debt owing by the mortgagor to the mortgagee, and it is solely because of the insufficiency of the primary security, viz: the mortgaged land, to satisfy the debt that a court of equity will impound the rents at the suit of the mortgagee. Such so-called "equitable lien" comes into being at the time the court assumes jurisdiction of the collection of the rents, and not before. Wyckoff v. Scofield, supra.

All of the debts of the bankrupt defendant Morris Bart to complainant Cumberland Trust Company were discharged in the aforesaid bankruptcy proceeding, and at the time the present bill was filed by complainants on March 1, 1929, to impound the rents of the Newcomer Building and Annex, defendant Morris Bart owed complainant Cumberland Trust Company nothing, as his discharge in bankruptcy related to November 22, 1928. The bankruptcy law does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but merely preserves the liens in existence at the date of the adjudication. In re Lineberry, 183 Fed., 338; Bowen v. Keller, 130 Ga., 31, 60 S. E., 174, 124 Am. St. R., 164.

Defendant Morris Bart had a right to the possession of the Newcomer Building and Annex when the trustee abandoned same on February 28, 1929. ''It has long been a recognized principle of bankrupt law that a trustee is not bound to take property of an onerous or unprofitable character, or property which will be a burden instead of a benefit. . . . Where the trustee elects not to take the property or right of the bankrupt and charge the estate with it, the property and right, whatever it is, remains in the bankrupt.'' 1 Loveland on Bankruptcy (4 Ed.), sec. 375. See also 3 R. C. L., p. 230; Sessions v. Romadka, 145 U. S., 29, 36 L. Ed., 609; Dow v. Bradbury (Me.), 44 L. R. A. (N. S.), 1041, 1046.

In the last cited opinion, the court said:

''The assignee of a living bankrupt, however, may decline to take or interfere with such property as he deems onerous or worthless. The property so rejected by the assignee does not thereby become derelict, to vest in the first appropriator. The rights and obligations which the assignee declines to enforce or notice do not thereby vanish into nothingness.

'' 'Such items of estate, corporeal or incorporeal, as the assignee declines to appropriate or utilize, remain the property of the bankrupt, subject always to the superior right and title of the assignee. Notwithstanding the adjudication and assignment under the bankrupt act, there is left in the bankrupt a right which makes a title good against all the world except his assignee and creditors. These may appropriate the entire title and interest, and so divest the bankrupt completely; but what they decline to appropriate remains with the bankrupt. The title does not fall to the ground between the two. If the assignee or creditors will not take it, no one else can appropriate it. The bankrupt can defend or enforce it against all others.' ''

Under the circumstances disclosed by the record, the complainants were not entitled to the appointment of a receiver in the instant case; and the mere fact that a receiver was appointed and collected rents pending the litigation could not create a lien on such rents. Bowen v. Keller, 124 Am. St. R., 164, 168, supra. The defendant Morris Bart ''was entitled to retain possession and consequently to the rents.'' Chadburn v. Henderson, 2 Baxt., 460, 463, supra.

We are inclined to agree with the contention of appellants that the failure of complainants to file a cross-bill in the suit brought by Harriott W. Ransom to foreclose her vendor's lien did not work a technical estoppel upon appellants, or afford a predicate for a plea of res adjudicata on behalf of defendant Morris Bart; but in view of our holdings already stated with respect to the other questions

raised by the assignments of error, a discussion of this question would be purely academic.

It results that appellant's assignments of error are overruled and the decree of the Chancellor is affirmed, and a decree will be entered accordingly. The costs of the cause, including the costs of the appeal, will be adjudged against the Cumberland Trust Company and the surety on its appeal bond.

The cause will be remanded to the Chancery Court of Knox County in order that the receiver may there pass his accounts, the receivership be closed, and the funds paid out under proper orders and decrees of that Court.

Crownover and DeWitt, JJ., concur.