GARZA, Circuit Judge:
I
FACTS and PROCEEDINGS BELOW
Appellant, Wolters, sold the property involved in this dispute to Southland Capital Properties, which sold the property to appellee Village Properties. The second purchase was subject to the original vendor’s lien, security agreement and the deed of trust, which included a provision for collateral assignment of rents. Either Village or Southland defaulted on the underlying promissory note and Village filed Chapter 11 bankruptcy on May 5, 1980. On June 5, 1980, appellant filed a complaint to modify the automatic stay to permit foreclosure on his deed of trust on realty and security agreement on equipment.
The bankruptcy court began adjudicating appellant’s complaint to modify stay on July 17, 1980. On September 1, 1980, the bankruptcy court ordered foreclosure. On September 2, 1980, the deed of trust, lien and security agreement securing the payment of Southland Capital’s promissory note was foreclosed and appellant acquired possession of the apartment project.
The complaint to modify the stay was the only pleading filed by appellant in this case between the filing of the Chapter 11 petition and the foreclosure sale. Before the foreclosure sale appellant did not petition the bankruptcy court for the appointment of a receiver to collect rents for its benefit, for an order of sequestration or for any other order to impound rents.
*443 Appellant filed a proof of claim against appellee on September 8, 1980, asserting an interest in rents collected between the alleged default and the foreclosure sale. Appellee filed an objection on January 20, 1981, on the ground that appellant was not a creditor of the appellee’s estate. After a hearing on stipulated facts, the bankruptcy court entered an order denying appellant’s claim on February 11, 1981. Appellant appealed to the district court on February 20, 1981. On December 6, 1982, the district court affirmed the bankruptcy court. Appellant appealed to this court on January 3, 1983.
II
ISSUE
This case presents one straight forward issue: under the Bankruptcy Code of 1978, does a mortgagee of Texas property who is the holder of a deed of trust that includes a collateral assignment of rents provision, have any secured interest in rents collected by the mortgagor between the time of default on the mortgage and a court ordered foreclosure, where the only action the mortgagee took was filing a complaint to modify the automatic stay and seek foreclosure? Texas law requires a mortgagee to take affirmative steps to secure his interest in rents collected between default and foreclosure. In Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held that under the Bankruptcy Act of 1898 state law controls this issue. We hold that Butner is still good law under the Bankruptcy Code of 1978. Thus under the Bankruptcy Code we look to state law to determine the issue in this case. We find the lower court interpreted Texas law correctly and we therefore affirm its decision.
Before reaching the main issue in this case we pause to discuss Texas law concerning a mortgagee’s interest in rents collected by a bankrupt estate. Texas adheres to the lien theory of mortgages. Under this theory the mortgagee is not the owner of the property and is not entitled to its possession, rentals or profits. Consequently, as occurred in the case at bar, mortgagees usually assign to themselves (through the deed of trust, or other instrument) the mortgagor’s interest in all rents falling due after the date of the mortgage as additional security for the mortgage debt. Texas courts have followed the common law rule that an assignment of rentals is not effective “until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action.” Taylor v. Brennan, 621 S.W.2d 592, 594 (Tex.1981) (citing Simon v. State Mutual Life Assur. Co., 126 S.W.2d 682 (Tex.Civ.App.—Dallas 1939, writ ref’d); McGeorge v. Henrie, 94 S.W.2d 761 (Tex. Civ.App.—Texarkana 1936, no writ)).
An absolute assignment of rentals, on the other hand, automatically transfers the right to rentals when a specified condition occurs (e.g. default). An absolute assignment passes title to the rents instead of creating a security interest. In Re Ventura-Louise Properties, 490 F.2d 1141 (9th Cir. 1974). Courts have been reluctant to construe assignment of rents as absolute assignments. Taylor, 621 S.W.2d at 594. Moreover, some courts and commentators have suggested that there is a presumption that-clauses assigning rents create a security interest. E.g., Childs v. Shelburne Realty Co., 23 Cal.2d 263, 268, 143 P.2d 697, 700 (1943); Note, Assignment of Rents Clauses Under California Law and in Bankruptcy; Strategy for the Secured Creditor, 31 Hast. L.J. 1433, 1452 (1980).
In Taylor the Supreme Court of Texas found that an assignment clause similar to the one in the case at bar manifested an intent by the parties to create a pledge of rentals. 621 S.W.2d at 595. Applying Texas law to the case before us we find that the assignment of rents in the deed of trust only created a security interest. Thus, if state law governs this issue (instead of the Bankruptcy Code) appellant is not entitled to the rents in dispute because it did not take affirmative steps to activate that pledge. For the appellant to prevail in this case Congress must have intended that the Bankruptcy Code preempt state law on the *444 assignment of rents. In addition, the Code must provide that an assignment is automatically activated upon default.
In Butner the Supreme Court held that under the Bankruptcy Act of 1898 state law governed a mortgagee’s interests in rents and profits earned by property in a bankrupt estate. Appellant notes that the Butner decision is limited to the Bankruptcy Act of 1898 and that it specifically recognized that Congress has the authority to enact a federal statute defining a mortgagee’s interest in rents. 440 U.S. at 54, 99 S.Ct. at 917.
Although Congress does have such power we find that they did not choose to exercise it pursuant to the Bankruptcy Code. Section 552 of the Code concerns the post-petition effect of a security interest. Section 552(b) provides:
Except as provided in sections 363, 506(e), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
11 U.S.C. § 552(b) (1978). (emphasis added). Section 552 is consistent with Butner. Its primary design is to permit creditors to take security interests in proceeds pursuant to applicable state law, such as U.C.C. Article 9 or whatever state law applies to security interests in real property. Section 552 reflects Congress’ historical concern that property rights usually should be controlled by state law instead of the “mere happenstance” of bankruptcy.
Of course, section 552(b) does permit a bankruptcy judge to deviate from state law “based on the equities of the ease.” In the case at bar, however, the bankruptcy judge found no equitable reason for not applying the Texas law. Moreover, legislative history regarding the section indicates its purpose was to cover cases where an expenditure of the estate’s funds increases the value of the collateral. H.Rep. No. 595, 95th Cong., 1st Sess. 376-77 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News, 5787, 6332-33. The House report gives as an example the situation where raw materials are converted into inventory at the expense of the estate (which would thus deplete the fund available for general unsecured creditors). Id. at 6333. In the case at bar then, section 552(b) clearly requires application of state law unless appellant can avail itself of the section 363 exception.
Section 363 defines the rights and powers of the trustee regarding the use, sale or lease of estate property and the rights of third parties with interests in the subject property. Section 363 does not create property interests, instead it protects parties with an interest in cash collateral. The section forbids a trustee from using, selling or leasing cash collateral under 363(c)(1) unless each entity with an interest in the cash collateral consents or the court, after notice and a hearing, authorizes such use pursuant to section 363. Noncash collateral can be disposed of in the ordinary course of business even if it is subject to another party’s interest. A party can seek “adequate protection” if such property is to be used. § 363(c). Finally, the section requires the trustee to segregate and account for any cash collateral in his possession. § 363(c)(4).
The reference to section 363 in section 552(b) appears on its face to concern the trustee’s ability to use, sell and lease secured property. Comments in the Congressional Record are instructive:
The provision allows the court to consider the equities in each case. In the course of such consideration the court may evaluate any expenditures by the estate relat *445 ing to proceeds and any related improvement in position of the secured party. Although this section grants a secured party a security interest in proceeds, products, offspring, rents, or profits, the section is explicitly subject to other sections of title 11. For example, the trustee or debtor in possession may use or lease proceeds, product, offspring, rents, or profits under section 363.
124 Cong.Rec. H 11,097-98 (daily ed. Sept. 28, 1978); S. 17,414 (daily ed. Oct. 6, 1978), reprinted in 4 Collier, Collier on Bankruptcy, 1552.02, at 552-5-6.
Appellant contends that section 363 is broader. Section 363(a) defines cash collateral as “cash ... or other cash equivalents in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest.” Appellant notes that in describing cash collateral the Senate Report on the Bill on the Bankruptcy Code stated: “[t]o illustrate, rents received from real property before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien.” S.Rep. No. 989, 95th Cong., 2nd Sess. 55, reprinted in [1978] U.S.Code Cong. & Ad. News 5841. Appellant then points out that Congress intended that the definition of “lien” be broad and include inchoate liens. Id. at 5811. Appellant also notes that section 101(37) of the Code states that “security interest” means a lien created by an agreement. From this premise appellant reasons that:
It should be indisputable that a lien under a collateral assignment of rents yet to be collected by the Debtor is an interest in such rents, even though, like most liens, it may need judicial enforcement. That it may need judicial enforcement does not make it any less a lien or any less an interest in the rents to be collected. Nothing in § 363 suggests that ‘cash collateral’, to be ‘cash collateral’ must already have been judicially enforced. Rather, § 363 provides the mechanism, means and procedure by which the fate of rents collected from and after commencement of bankruptcy proceedings, either for the benefit of the lien holder or for the benefit of the Trustee or Debtor in Possession, or both, as the facts unfolded.... The fact that the interest under state law is not self enforcing, does not make the collateral assignment any less a lien, or the lien any less an interest, on as yet uncollected rents.
Appellant’s brief, at 18-19.
Appellee points out that section 363 defines cash collateral as “cash ... in which the estate and an entity other than the estate have an interest.” Appellee argues that bankruptcy courts must turn to state law to determine whether and at what time a mortgagee has an interest in the rents because it is only at that time that it becomes “cash collateral.”
We agree with appellee. Whether or not appellant’s lien is “any less a lien,” under Texas law it is impotent with regard to rents until it is perfected. We reject appellant’s unsubstantiated reasoning that Congress intended for section 363 to preempt state law which traditionally determines the property rights at dispute in this case. “[S]tate-created property rights, in a bankruptcy context, will not be destroyed by implication.” In the Matter of Jeffers, 3 B.R. 49, 56 (Bkrtcy.N.O.Ind.1980) (citing Butner). Moreover, the comment in Senate Report 989, on which appellant relies, provides that rents received “before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien.” This language mirrors the provision in section 552(b), which provides that a security interest will exist “to the extent provided by such security agreement and by applicable nonbankruptcy law ...” Thus if appellant’s claim fails under section 552(b), 363 is to no avail.
We hold that the Butner decision remains unscathed by the new Bankruptcy Code. Courts addressing this issue, two dealing specifically with rent assignments, have noted its continuing validity. E.g., In Re Jenkins, 13 B.R. 721, 723 (Bkrtcy.D.Col. 1981); rev’d on other grnds 19 B.R. 105, 107 (D.C.Col.1982); In Re Oak Glen R-Vee, 8 B.R. 213, 216 n. 3 (Bkrtcy.C.D.Cal.1981); In *446 Re Gaslight Village, Inc., 6 B.R. 871, 874 (Bkrtcy.D.Conn.1980); In Re Hellenschmidt, 5 B.R. 758, 760 (Bkrtcy.Ct.D.Col. 1980); In Re Wheeler, 5 B.R. 600, 603 (Bkrtcy.N.D.Ga.1980); In the Matter of Jeffers, 3 B.R. 49, 56 (Bkrtcy.N.D.Ind.1980), see, e.g., In Re Kuhn Construction Co., Inc., 11 B.R. 746 (Bkrtcy.S.D.W.Va.1981). An examination of the legislative history reveals that Congress did not intend for the Code to preempt state law determination of a mortgagee’s interests in rents. This conclusion comports with “the principle of bankruptcy jurisprudence ... that federal law supercedes state law only to the extent necessary to further federal objectives.” In Re Hellenschmidt, 5 B.R. 758, 760 (Bkrtcy.D.Col.1980). The policy considerations and federalism concerns that underpin the Butner decision are just as applicable to the new code as they were to the 1898 Act. As the Supreme Court has noted: “uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving ‘a windfall merely by reason of the happenstance of bankruptcy.’ ” Butner 440 U.S., at 55, 99 S.Ct., at 918 (quoting Lewis v. Manufacturers National Bank, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)).
Thus we apply state law to determine appellant’s interest in the collateral rents involved in this case. As noted, the appellant did not even attempt to obtain sequestration or take other affirmative action. He therefore has not perfected his interest. In future cases, however, federal courts may be faced with situations where a Texas mortgagee petitions for sequestration, a receiver or adequate protection but the granting of the petition is delayed or denied. We recognize that judicial enforcement of collaterally assigned rents seldom occurs in Texas.[1] Under the Bankruptcy Code, however, such petitions need not be granted by a federal court for the Texas mortgagee to perfect his interest in rentals. It should be remembered that in Taylor the Texas Supreme Court held that an assignment of rentals becomes operative when the mortgagee “obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action.” 621 S.W.2d at 594 (emphasis added). The filing of such a petition requires affirmative action which is equivalent to the spirit of the Taylor v. Brennan requirements. The form of the action required to perfect the mortgagee’s interest is not as important as its substantive thrust — diligent action by the mortgagee which demonstrates that he would probably have obtained the rents had bankruptcy not intervened.
Giving undue weight to the, procedural form of the affirmative action required by Texas law would handicap a mortgagee under the Bankruptcy Code. For example, section 105(b) of the Code prohibits appointment of a receiver. Moreover, obtaining “adequate protection” under section 363(e) is conditioned upon one having an “interest” in the property. Obviously, if a mortgage does not have such an interest under Texas law he cannot obtain “adequate protection.” The logical solution is to perfect the Texas mortgagee’s interest when he petitions for sequestration, a receiver, adequate protection, etc. Although some states hold that perfection should occur only upon actual possession[2] we believe that the “or takes some other similar action” language in Taylor encompasses perfection of a mortgagee’s interest by petitioning for sequestration and the like. In a recent case, involving California law very similar to Texas, a court held that filing an action to require the debtor to cease spend *447 ing, to segregate, and to account for all rents, income etc. perfected the mortgagee’s interest from the date of the filing. Although the court denied sequestration because of a $1 million dollar equity cushion, it noted that the mortgagee deserved perfection because he would have obtained the rents under California law if bankruptcy proceedings had not intervened. In Re Oak Glen R-Vee, 8 B.R. 213, 216 (Bkrtcy.C.D.Cal.1981); see also Groves v. Fresno Guarantee Savings & Loan Ass’n, 373 F.2d 440, 442-43 (9th Cir.1967); Pollack v. Sampsell, 174 F.2d 415, 418-19 (9th Cir.1949).
We also note that Congress has recognized the wisdom of allowing a security interest in rents to be perfected through mere notice. Section 546(b) provides that:
The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.
11 U.S.C. § 546(b) (Supp. II 1978).
For the foregoing reasons the decision of the lower court is AFFIRMED.

. Texas utilizes a fast method of foreclosing deeds of trust, and without leaving equities of redemption behind through private trustees appointed for that purpose. The process only entails written notice to the owner and public notice posted on the courthouse door for twenty-one days prior to the date of sale, the first Tuesday of each calendar month. Consequently, judicial foreclosure is seldom necessary and judicially enforced collection of collaterally assigned rents is rare.

. In the Matter of Michigan Ave. National Bank, 2 B.R. 171, 185 (Bkrtcy.N.D.Ill.1980).