**In re David A. CRABTREE, a/k/a West Knoxville Investment Company, Inc., Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court, D. Tennessee.

Aug. 7, 1985.

Morton, Lewis, King & Krieg, M. Edward Owens, Jr., Knoxville, Tenn., for Federal Deposit Ins. Corp.

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, Washington, D.C., Walker &

Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for trustee.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

In a motion filed May 9, 1985, the Federal Deposit Insurance Corporation (FDIC) requests the abandonment of property pursuant to 11 U.S.C.A. § 554(b) (West Supp. 1985). By its motion the FDIC seeks to compel the trustee in bankruptcy, D. Broward Craig ("Craig"), to abandon certain rents collected with respect to a commercial property located in LaFollette, Tennessee. At the hearing, FDIC did not offer any testimony or seek to otherwise introduce any evidence. The court did, however, consider the exhibits to its motion as evidence in the cause without objection from Craig. Based upon the motion and exhibits thereto, Craig's responsive memorandum, and other matters of record, the court does hereby enter its findings of fact and conclusions of law.

The debt underlying this controversy arose on June 21, 1976, when C. Lynnwood Garrett and wife, Margaret Garrett executed a promissory note and security agreement, evidencing a debt payable to the City and County Bank of Campbell County, Tennessee, in the original principal amount of $145,200. To further secure the debt, the Garretts also executed a deed of trust upon certain real property in Campbell County, Tennessee. This deed of trust was placed of record on July 7, 1976. The deed of trust was subsequently modified by a correction deed of trust which changed the name of the person designated as trustee. This correction deed of trust was placed of record on March 4, 1980. By an assumption agreement dated October 31, 1979, the debtor David A. Crabtree assumed all obligations of the Garretts to C & C Bank of Campbell County under the promissory note/security agreement and deeds of trust.

Subsequently, the C & C Bank of Campbell County failed and was closed by the Commissioner of Banking of the State of Tennessee, who appointed the movant Federal Deposit Insurance Corporation as receiver of the failed bank. The FDIC, in its corporate capacity, purchased the bank's interest in the promissory note/security agreement and deeds of trust. The debt formerly owed to C & C Bank of Campbell County is thus now owed to the FDIC in its corporate capacity.

On July 14, 1983, an involuntary bankruptcy petition was filed against the debtor. An order for relief was entered on August 22, 1983.

On September 27, 1984, the trustee in bankruptcy commenced an adversary proceeding against certain parties who had leased the real property (*Craig v. Druthers International, Inc.*, adv. proc. 3–84–0296). This Court granted the trustee a judgment on April 1, 1985, for $21,507.50, representing back rents due upon the real property.

On April 19, 1985, the real property described in the deeds of trust was auctioned with approval of this Court. Pursuant to order of this court, the net proceeds of the sale, some $50,681.14, are to be paid to the FDIC upon closing, to be applied to the debt secured by the real property. This payment will leave a balance due upon the debt of some $63,918.79, plus interest accruing at the rate of $15.76 per day since April 19, 1985.

The FDIC moved thereafter for abandonment of the rents, alleging that the rents are of inconsequential value to the estate. The FDIC alleges that it has a perfected security interest in the rents of the real property, pursuant to the promissory note/security agreement and deeds of trust, and that the security interest is enforceable against the trustee. The FDIC further alleges that the estate has no equity in the rents, which are of a lesser value than the debt they allegedly secure.

It is not disputed that the deeds of trust grant a security interest in the real property itself. The parties are in dispute, however, as to whether the deeds of trust and the promissory note/security agreement grant the FDIC a security interest in the rents of the real property, and whether

that security interest is enforceable against the trustee.

The original deed of trust provides that it is given to secure the payment of C. Lynnwood Garrett and wife, Margaret L. Garrett, to City and County Bank of Campbell County, LaFollette, Tennessee, in the sum of $145,200, evidenced by one promissory note dated June 21, 1976, and payable in monthly installments of $1,472.74, beginning one month from June 25, 1976, and payable monthly on the same day thereafter until the full amount of the note and interest has been paid. The correction deed of trust provides that it is given to secure the repayment of an indebtedness of C. Lynnwood Garrett and wife, Margaret L. Garrett to City and County Bank of Campbell County in the amount of $145,-200, evidenced by one promissory note dated June 21, 1976, and payable in monthly installments of $1,472.74, the first payment being due on July 25, 1976, and thereafter monthly on the same day of each month until the debt is paid in full. Similarly, the promissory note and security agreement relied upon by FDIC is dated June 21, 1976. The note is in the principal amount of $145,200, and is payable to C & C Bank of Campbell County in monthly installments of $1,472.74, beginning one month from June 25, 1976, and on the same day thereafter until the full amount of the note and interest has been paid.

The promissory note/security agreement, page 1, contains the following language:

This obligation and any other and future advances or debts of any of the obligors to the Bank are secured by all property of any of the obligors heretofore or hereafter in the possession of or pledged to the Bank or as to which the Bank acquires a security interest or lien.... Any and all of said property as to which Bank obtains a security interest is sometimes hereinafter referred of [sic] as the "collateral."

The promissory note/security agreement further provides that "[a] security interest in the following property is being acquired

at the time of this loan" and thereinafter contains the notation "T/D."

The following additional language is contained in the promissory note/security agreement:

The Collateral secures the payment of this note ... and obligors hereby create in favor of the holder a security interest in all income ... incident to any of the Collateral.

\* \* \* \* \* \*

If Bank deems itself insecure or upon the occurence of any default hereunder Bank shall have the remedy of a secured party under the Uniform Commercial Code....

\* \* \* \* \* \*

In the event of a default ... (ii) the holder hereof may at its option exercise from time to time any or all rights and remedies available under the Uniform Commercial Code, or which are otherwise available by law or contract....

\* \* \* \* \* \*

In addition to all other rights possessed by it, the holder hereof shall have the following rights, each of which may be exercised at any time and in the sole discretion of the holder: ... (v) to take control of any proceeds of the Collateral....

\* \* \* \* \* \*

Any failure of the holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any other time. This instrument shall be governed by the laws of Tennessee.

Craig raises three objections to the instant motion. First, that the FDIC does not have a security interest in the rents. Second, even if it had a security interest, the FDIC failed to perfect its lien by seeking possession or sequestration of the rents. Third, the FDIC should have filed a complaint under Rule 7001, rather than a motion under Rule 9014.

## I.

The third objection will be considered first, i.e., whether FDIC has selected an inappropriate procedure to enforce its claim to the LaFollette property rents.[1] FDIC is seeking a determination of the validity, priority, and extent of its interest in rents under the deed of trust. A proceeding to determine the validity, priority, or extent of a lien or other interest in property is an adversary proceeding governed by Part VII of the Bankruptcy Rules. Rule 7001(2). Part VII requires that adversary proceedings be initiated by summons and complaint. Bankruptcy Rules 7003, 7004. Since the substantive issues raised by the FDIC's motion were at issue at the hearing, counsel for Craig consented to the Court's disposition of the FDIC's claim in this proceeding. Therefore, the Court will reach the merits, notwithstanding the procedural defects in FDIC's motion.

## II.

The validity and effect in bankruptcy of an assignment of rents must be determined by reference to applicable state law. 11 U.S.C.A. § 552(b) (West Supp.1985); *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Wolters Village, Ltd. v. Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984), *cert. denied*, —— U.S. ——, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). The second issue, then, is whether FDIC has a security interest in the LaFollette property rents under Tennessee law.

The deed of trust does not contain the term "rents," nor does it provide for the assignment of rents. Normally, absent an express assignment of rents in the deed of trust, a mortgagee has no lien on, or security interest in rents. *Cumberland*

*Trust Co. v. Bart*, 15 Tenn.App. 138, 148 (1932). Further, where a deed of trust contains no assignment of rents, and the grantor remains in possession, the grantor, and not the creditor, is ordinarily entitled to the rents and profits until foreclosure. *Easley v. Tarkington*, 64 Tenn. 592 (1875). It is conceded that FDIC never sought to foreclose the trust deed on the LaFollette property.

FDIC argues, however, that the reference to the promissory note in the deed of trust has the effect of incorporating the promissory note/security agreement into the deed of trust. Thus, according to FDIC, the language in the security agreement relating to income from collateral creates an effective assignment of rents.

However, it is unnecessary for this court to decide this question. Even were the deed of trust and promissory note/security agreement deemed together to have effected an assignment of rents, FDIC could not prevail because of its failure to timely perfect any such interest in the rents here in question.

## III.

The question of a mortgagee's right to rents and profits of mortgaged property after the commencement of bankruptcy also arose under the former Bankruptcy Act. *See generally* 4A *Collier on Bankruptcy* ¶ 70.16 [7] (14th ed. 1978 & Supp. 1984).

In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) the United States Supreme Court held that determinations in bankruptcy proceedings regarding the existence and extent of a mortgagee's security interest in the rents and profits of the mortgaged property should be resolved by reference to state law.[2]

---

1. If Craig had not disputed the FDIC's lien, proceeding by motion on the abandonment issues would have been appropriate. 11 U.S.C.A. § 554(b) (West Supp.1985); Bankruptcy Rule 6007(b).

2. The Court rejected the minority view that had adopted a uniform federal approach based on

equity which recognized a mortgagee's security interest in rents without regard to what affirmative steps applicable state law might require of the mortgagee in order to establish a right to the rents. *Butner*, at 51–54, 99 S.Ct. at 916–917. *See generally* 4A *Collier on Bankruptcy* ¶ 70.-16[7] at 167–69 (14th ed. 1978).

In *Wolters Village, Ltd. v. Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984), *cert. denied,* —— U.S. ——, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984), the Court of Appeals for the Fifth Circuit held that "the *Butner* decision remains unscathed by the new Bankruptcy Code." *Village Properties*, at 445. In *Village Properties* after commencement of a chapter 11 case the holder of a deed of trust filed a complaint to modify the automatic stay to permit foreclosure on his deed of trust. The bankruptcy court permitted foreclosure. Between the filing of the chapter 11 petition and the foreclosure sale the mortgagee took no steps to request the appointment of a receiver, an order of sequestration, or an order of impoundment respecting the rents from the property. The mortgagee subsequently attempted to assert a claim to the rents collected between default and the foreclosure sale.

The court of appeals observed that under the applicable state law an assignment of rents "becomes operative when the mortgagee 'obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, *or takes some other similar action.*' [citation omitted]" *Village Properties*, 723 F.2d at 446 (emphasis added in original).

Since the mortgagee had made no attempt after the commencement of bankruptcy to take such action respecting the rents (having only petitioned for relief from the stay to foreclose on the realty itself) the court of appeals held that he had not perfected his interest in the rents. The court noted, however, that the *filing* of a petition for sequestration, a receiver, adequate protection, etc. would be sufficient to perfect a mortgagee's interest in rents. *Village Properties*, 723 F.2d at 446. In so concluding, the court pointed to § 546(b) of the Bankruptcy Code.[3] *See also Santa Fe Federal Savings & Loan Association v. Oak Glen R-Vee*, 8 B.R. 213 (Bankr.C.D. Cal.1981) (postpetition filing of complaint to require debtor to cease spending, to segregate, and to account for rents was sufficient to enable court to sequester for benefit of holders of deed of trust rents accruing after, but not before, filing of such complaint). *But see Exchange National Bank of Chicago v. Gotta*, 47 B.R. 198 (Bankr.W.D.Wis.1985) (where mortgagee did not have at commencement of chapter 11 case a perfected security interest in rents mortgagee held not entitled to appointment of trustee to collect rents since appointment of trustee was sought solely to perfect interest in rents and to avoid automatic stay provision prohibiting postpetition perfection of security interest).[4]

■ In the instant case the court need not actually decide whether § 546(b) operates to permit a mortgagee or beneficiary of a deed of trust to perfect a security interest in rents subsequent to the commencement of bankruptcy proceedings. Nor (assuming that § 546(b) does permit such perfection) need the court decide precisely what manner of filing would be appropriate and sufficient to perfect such an interest under § 546(b).[5] Even assuming

---

3. This subsection provides:

   The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

   11 U.S.C.A. § 546(b) (West Supp.1985).

4. In *Gotta* the court concluded that the § 546(b) exception to the automatic stay was intended to permit only the postpetition perfection of liens which under state law would *relate back* prepetition in effectiveness. *Gotta*, 47 B.R. at 202.

   However, such a contention was rejected by the court in *In re Colter, Inc.*, 46 B.R. 510 (Bankr.D.Colo.1984) (postpetition filing of § 546(b) notice constituted sufficient perfection of assignee's interest in rents to entitle it to priority in rents accruing after notice filed.)

5. *Compare Village Properties*, 723 F.2d at 446 ("The logical solution is to perfect the Texas mortgagee's interest when he petitions for sequestration, a receiver, adequate protection, etc.") *with Colter, Inc.*, 46 B.R. at 511 (notice

that § 546(b) would permit FDIC to perfect postpetition an interest in rents by filing, as it did, a motion to abandon under § 554(b), FDIC would still not be entitled to prevail on these facts.

Here, the involuntary petition was filed on July 14, 1983, and the order for relief was entered August 22, 1983. Thereafter, the trustee in bankruptcy sued the lessee of the property for rent arrearage and obtained a $21,507.50 judgment on April 1, 1985. The property was sold on April 19, 1985. Only then did FDIC act. On May 9, 1985, it filed its motion requesting the abandonment of the rent. It took no action to assert any interest in the rent until long after the rent in question had accrued and, indeed, until after the property itself was sold.

As *Village Properties* makes clear, assuming that bankruptcy and nonbankruptcy law permit a mortgagee to perfect postpetition a hitherto unperfected security interest in rents by a timely and appropriate filing in the bankruptcy court, if the mortgagee takes no such step before the sale of the property, the mortgagee's interest in the rents remains plainly, simply, and not surprisingly, unperfected. Since that is precisely what FDIC has done in this case, it could not, even under a construction of the law most favorable to its position, be entitled to the rent proceeds here in dispute.[6] Further, this court need not, and does not, go.

that creditor intended to avail itself of rights under assignment of rents and objecting to use of cash collateral).

**6.** FDIC would apparently proffer the rather nebulous argument that certain language in the promissory note/security agreement (permitting the secured party to take control of the proceeds of the collateral "at any time and in the sole discretion of the holder") somehow operates to allow it to assert its interest in the rent at the thirteenth hour. This contention simply makes no sense. At a minimum it is clear that a mortgagee asserting a lien under an assignment of rents is entitled only to those rents accruing *after* the mortgagee takes the appropriate affirmative action to assert an interest in the rents. *Colter, Inc.,* 46 B.R. at 514; *Oak Glen R-Vee,* 8 B.R. at 216; *Morgan Bros. v.*

In accordance with Bankruptcy Rule 7052, this memorandum constitutes findings of fact and conclusions of law.

*Dayton Coal & Iron Co.,* 134 Tenn. 228, 183 S.W. 1019, 1031 (1916) (under mortgage by going concern of realty, plant and equipment, with its income and profits, and giving mortgagee right to enter, take charge, and operate to discharge mortgage debt, the income and profits do not pass under the lien of the mortgage until default and trustee's possession, and lien attaches only to income and profits arising after default and such possession); 55 Am.Jur.2d *Mortgages* § 211 (1971). *See Cumberland Trust Co. v. Bart,* 15 Tenn.App. 138 (1932) (where deed of trust expressly provided that in the event of foreclosure beneficiary would be entitled to receiver for collection of rents beneficiary had no lien on rents unless and until institution of foreclosure action).